**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| ANTHONY CHARLES TORDIGLIONE, | § | |
|     DEBTOR(S) | § | CASE NO. 25-44309-elm13 |
| | § | |
| GUILD MORTGAGE COMPANY LLC, ITS | § | CHAPTER 13 |
| ASSIGNEES AND/OR SUCCESSORS | § | |
|     MOVANT | § | |
| | § | |
| VS. | § | |
| | § | |
| ANTHONY CHARLES TORDIGLIONE, | § | |
| DEBTOR(S) AND | § | |
| TIM TRUMAN, TRUSTEE, | § | |
|     RESPONDENTS | | |

**AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF
FROM AUTOMATIC STAY OF AN ACT AGAINST PROPERTY**

| | |
|---|---|
| THE STATE OF <u>CALIFORNIA</u> | § |
| COUNTY OF <u>SAN DIEGO</u> | § |

BEFORE ME, the undersigned authority, on this day personally appeared **Brian Orsino**, who is over the age of eighteen years, and who, after being first duly sworn on her/his oath, deposed and stated as follows:

1. "My name is **Brian Orsino**. I am a **Director** of Guild Mortgage Company LLC. In such capacity, I am authorized to make this affidavit.

2. Guild Mortgage Company LLC is the servicer of the mortgage loan described below (the "Loan"). Guild Mortgage Company LLC, its assignees and/or successors, are collectively referred to as the "Movant".

3. I have access to Guild Mortgage Company LLC's books and records regarding the

Loan with Movant, including Guild Mortgage Company LLC's servicing records and copies of the applicable Loan documents. I am familiar with the manner in which Guild Mortgage Company LLC maintains its books and records, including computer records relating to the servicing of the Loan. Guild Mortgage Company LLC's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded. Such records are obtained, kept and maintained in the regular course of Guild Mortgage Company LLC's business as a loan servicer, and it is the regular practice of Guild Mortgage Company LLC to make and keep such records. Guild Mortgage Company LLC relies on such records in the ordinary course of its business.

4.      According to Guild Mortgage Company LLC's books and records, the Loan is evidenced by a note dated 4/12/2018 in the original principal amount of $424,100.00 (the "Note"). Guild Mortgage Company LLC's books and records reflect that the Movant owns or otherwise holds the Note that either names the Movant as the payee or is indorsed to the Movant or indorsed in blank, or payable to bearer.

5.      The Note is secured by a deed of trust (the "Deed of Trust") relating to the real property commonly known as 178 Sams Lane, Aledo, TX 76008 (the "Property"). The Deed of Trust was duly recorded.

6.      Copies of the Note, Deed of Trust and, if applicable, other Loan documents are attached hereto. The documents attached are true and correct copies of the documents contained in Guild Mortgage Company LLC's business records and contains the following documents:

* Note and any Loan Modification Agreement(s);
* Deed of Trust;
* Assignment(s); and
* Payment History

7.      As of 3/11/2026, the Loan was post-petition due for the December 2025 through

March 2026 monthly mortgage payments of $3,875.10 each LESS $0.00 suspense for a total of $15,500.40.  As of 3/11/2026, the total unpaid principal balance of the Loan was $360,168.25.

8.      Movant has retained counsel to represent it before this Court, and Movant is incurring legal expenses and attorneys' fees for the handling the *Motion for Relief from Automatic Stay of an Act Against Property*.

9.      The foregoing facts are based upon Movant's books and records, and if called upon to appear as a witness, I could and would testify competently thereto.  I declare that the foregoing facts are true and correct to the best of my information, belief and knowledge."

**GUILD MORTGAGE COMPANY LLC**

By:      _____
            Brian Orsino, Director

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California
County of San Diego

Subscribed and sworn to (or affirmed) before me on **31st** day of **March 2026** by **Brian Orsino** proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____.

CARLOS SILVA JR.
Notary Public · California
San Diego County
Commission # 2433323
My Comm. Expires Jan 6, 2027

We hereby certify that this is a true &
Correct copy of the original hereof
CAPITAL TITLE

By _____

Loan No.: [redacted]

# NOTE

MIN.: [redacted]3370

| April 12, 2018 | FORT WORTH | Texas |
|---|---|---|
| [Date] | [City] | [State] |
| | 178 SAMS LANE, ALEDO, TX 76008 | |
| | [Property Address] | |

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $424,100.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.000%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on **June 1, 2018.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **May 1, 2048,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **5898 Copley Drive, San Diego, CA 92111** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,276.66.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac Uniform Instrument      Form 3200 1/01
The Compliance Source, Inc.      Page 1 of 3      12601MU 08/00 Rev. 10/17
©2000-2017, The Compliance Source, Inc.

loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.      BORROWER'S FAILURE TO PAY AS REQUIRED
        (A)  Late Charge for Overdue Payments
        If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
        (B)  Default
        If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
        (C)  Notice of Default
        If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
        (D)  No Waiver By Note Holder
        Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
        (E)  Payment of Note Holder's Costs and Expenses
        If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.      GIVING OF NOTICES
        Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
        Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.      OBLIGATIONS OF PERSONS UNDER THIS NOTE
        If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person, who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.      WAIVERS
        I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.     UNIFORM SECURED NOTE
        This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
ANTHONY C. TORDIGLIONE           -Borrower                                                      -Borrower

_____ (Seal)                    _____ (Seal)
                                 -Borrower                                                      -Borrower

[Sign Original Only]

**Pay to the order of**

**without recourse**
**GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION**

**By** _____ **(signature)**
**Name**
**Title**

**Loan Originator Organization: GUILD MORTGAGE COMPANY, NMLSR ID:** ███████
**Individual Loan Originator's Name: TRACEY LYNN LINDSEY, NMLSR ID:** ███████

Title: LOAN MODIFICATION AGREEMENT  (DEED OF TRUST)

This Document Prepared By:
**ANDREA CHAMBERLAIN**
**GUILD MORTGAGE COMPANY**
**LLC**
**P.O. BOX 85304**
**SAN DIEGO, CA 92186**
**(800) 365-4884**

When Recorded Mail To:
**GUILD MORTGAGE COMPANY**
**LLC**
**5887 COPLEY DRIVE**
**SAN DIEGO, CA  92111**

**Tax/Parcel #:** ███████████

_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| **Original Principal Amount: $424,100.00** | **Fannie Mae Loan No.:** ████ |
| **Unpaid Principal Amount: $411,380.84** | **MERS Min:** ████ 3370 |
| **New Principal Amount: $489,437.41** | **MERS Phone #:** ████ |

# LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

**(Providing for Fixed Interest Rate)**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)          ███████████
███████████

This Loan Modification Agreement ("Agreement"), made this **24TH** day of **JANUARY, 2022**, between **ANTHONY C. TORDIGLIONE, MARRIED AND CYNTHIA R TORDIGLIONE, HIS WIFE** ("Borrower"), whose address is **178 SAMS LANE, ALEDO, TEXAS 76008** and **GUILD MORTGAGE COMPANY LLC** ("Lender"), whose address is **P.O. BOX 85304, SAN DIEGO, CA 92186**, and Mortgage Electronic Registration Systems, Inc. ("MERS") ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **APRIL 12, 2018** and recorded on **JULY 20, 2018** in **INSTRUMENT NO. 201817981**, of the **OFFICIAL** Records of **PARKER COUNTY, TEXAS**, and (2) the Note **bearing the same date as**, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at,

**178 SAMS LANE, ALEDO, TEXAS 76008**
(Property Address)

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1) As of **MARCH 1, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$489,437.41**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2) Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **2.8750%** from **FEBRUARY 1, 2022**. Borrower promises to pay monthly payments of principal and interest of U.S. **$1,717.04** beginning on the 1ST day of **MARCH, 2022** and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **2.8750%** will remain in effect until the principal and interest are paid in full. If on **FEBRUARY 1, 2062** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)

Page 2

3) If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4) Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note

    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5) Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)
██████

remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower  information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's  loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

(g) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)

Page 4

and assigns. **MERS is the Beneficiary of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ████████

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)     ████████

Page 5

In Witness Whereof, I have executed this Agreement.

_____     3-8-2022
Borrower: ANTHONY C. TORDIGLIONE                          Date

_____     3-8-22
Borrower: CYNTHIA R. TORDIGLIONE  *signing solely to       Date
acknowledge this Agreement, but not to incur any personal liability for
the debt

_____[Space Below This Line for Acknowledgments]_____

## BORROWER ACKNOWLEDGMENT

State of **TEXAS**

County of _Parker_

This instrument was acknowledged before me, _____ on
this day personally appeared **ANTHONY C. TORDIGLIONE, CYNTHIA R.
TORDIGLIONE** known to me, _____ proved to me through
_____TX DL_____(description of Identify Card or Document)
to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and
acknowledged to me that he/she/they executed the same for the purposes and consideration
therein expressed.
_____ This notarial act was an online notarization using communication technology

Given under my hand and seal of office this _____8_____ day of _MARCH_____ (month),
_2022_ (year)

_____
Notary Public's Signature

Printed Name: MEGAN NICOLE ANTHONY

> MEGAN NICOLE ANTHONY
> NOTARY PUBLIC
> STATE OF TEXAS
> ID # 13182505-1
> My Comm. Expires 12-13-2022

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)

Page 6

Mortgage Electronic Registration Systems, Inc., ("MERS"), is a separate corporation that is acting solely as designated nominee for lender and lender's, beneficiary of the security instrument, its succesors and assigns

By _____

**Lena Pozhitsky**
**Assistant Secretary**
_____

Date MAR 2 2 2022
_____ [Space Below This Line for Acknowledgments]_____

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA )
County of SAN DIEGO )

On MAR 2 2 2022 before me Rebecca Gilbert _____ Notary Public, personally appeared _____ LENA POZHITSKY _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/ their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

REBECCA GILBERT
Notary Public - California
San Diego County
Commission # 2391591
My Comm. Expires Jan 24, 2026

(Seal)

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)

Page 7

In Witness Whereof, the Lender has executed this Agreement.

**GUILD MORTGAGE COMPANY LLC**

_____                          MAR 2 2 2022

Lena Pozhitsky                    (print name)                          _____
Mgr Loss Mitigation                                                      Date
Guild Mortgage                   (title)

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA           )
County of SAN DIEGO          )

On ___MAR 2 2 2022___ before me _Rebecca Gilbert_____Notary Public, personally appeared _____LENA POZHITSKY_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Rebecca Gilbert_____                                                    (Seal)
              Signature of Notary Public

REBECCA GILBERT
Notary Public · California
San Diego County
Commission # 2391591
My Comm. Expires Jan 24, 2026

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)

Page 8

Date: **JANUARY 24, 2022**
Loan Number: ███████████
Lender: **GUILD MORTGAGE COMPANY LLC**

Borrower: **ANTHONY C. TORDIGLIONE, CYNTHIA R. TORDIGLIONE**

Property Address: **178 SAMS LANE, ALEDO, TEXAS 76008**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____     3-8-2022
Borrower                                              Date
ANTHONY C. TORDIGLIONE

_____     3-5-22
Borrower                                              Date
CYNTHIA R. TORDIGLIONE *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)
███████████                                          ███████████

Page 9

Date: JANUARY 24, 2022
Loan Number: ███████
Lender: GUILD MORTGAGE COMPANY LLC
Borrower: ANTHONY C. TORDIGLIONE, CYNTHIA R. TORDIGLIONE
Property Address: 178 SAMS LANE, ALEDO, TEXAS 76008

# ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of GUILD MORTGAGE COMPANY LLC

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period .

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

| | |
|---|---|
| ANTHONY C. TORDIGLIONE | 3-8-2022 Date |
| CYNTHIA R. TORDIGLIONE *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt | 3-8-22 Date |

LOAN MODIFICATION AGREEMENT - Flex Mod (3179)                    ███████

Page 10

Lender: **GUILD MORTGAGE COMPANY LLC**

Loan Number: █████████
Loan Amount: **$489,437.41**

Borrower: **ANTHONY C. TORDIGLIONE**
Address: **178 SAMS LANE, ALEDO, TEXAS 76008**

# TEXAS LOAN AGREEMENT NOTICE

Section 26.02(b) of the Texas Business and Commerce Code provides as follows:
   A Loan agreement in which the amount involved in the Loan agreement exceeds $50,000.00 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.

You are hereby notified that:

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PARTIES.**

**LENDER: GUILD MORTGAGE COMPANY LLC**

| By: MARIAN E. JOHNSTON | Date |
|---|---|
| Borrower: ANTHONY C. TORDIGLIONE | 3-8-2022 Date |

## Exhibit "A"
## Legal Description

[Recording Jurisdiction]                    [Name of Recording Jurisdiction]
LOT 7, RANCHES OF BEAR CREEK, PHASE III, AN ADDITION IN PARKER COUNTY, TEXAS, ACCORDING TO PLAT AS RECORDED IN PLAT CABINET B, SLIDE 655, PLAT RECORDS, PARKER COUNTY, TEXAS.

Title: LOAN MODIFICATION AGREEMENT  (DEED OF TRUST)

This Document Prepared By:
**ANDREA  CHAMBERLAIN**
**GUILD MORTGAGE COMPANY LLC**
**P.O. BOX 85304**
**SAN DIEGO, CA 92186**
**(800) 365-4884**

When Recorded Mail To:
**GUILD MORTGAGE COMPANY LLC**
**5887 COPLEY DRIVE**
**SAN DIEGO, CA  92111**

**Tax/Parcel #:** ▮▮▮▮▮▮

_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| **Original Principal Amount: $424,100.00** | **Fannie Mae Loan No.:** ▮▮▮▮▮ |
| **Unpaid Principal Amount: $480,568.26** | **MERS Min:** ▮▮▮▮▮3370 |
| **New Principal Amount: $519,252.80** | **MERS Phone #:** ▮▮▮▮▮ |

# LOAN MODIFICATION AGREEMENT (DEED OF TRUST)
### (Providing for Fixed Interest Rate)

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

This Loan Modification Agreement ("Agreement"), made this **12TH** day of **SEPTEMBER, 2024,** between **ANTHONY C. TORDIGLIONE, MARRIED AND CYNTHIA R TORDIGLIONE, HIS WIFE** ("Borrower"), whose address is **178 SAMS LANE, ALEDO, TEXAS 76008** and **GUILD MORTGAGE COMPANY LLC** ("Lender"), whose address is **P.O. BOX 85304, SAN DIEGO, CA 92186**, and Mortgage Electronic Registration Systems, Inc. ("MERS") ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **APRIL 12, 2018** and recorded on **JULY 20, 2018** in **INSTRUMENT NO. 201817981,** of the **OFFICIAL** Records of **PARKER COUNTY, TEXAS,** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at,

LOAN MODIFICATION AGREEMENT - Flex Mod (3▮ ▮▮▮▮▮
Page 1

**178 SAMS LANE, ALEDO, TEXAS 76008**
(Property Address)

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1)  As of **OCTOBER 1, 2024**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$519,252.80**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2)  **$156,237.57** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The new Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$363,015.23**. Interest will be charged on the Interest Bearing Principal Balance at a yearly rate of **2.8750%** from **SEPTEMBER 1, 2024**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,273.52** beginning on the 1ST day of **OCTOBER, 2024**. Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full. If Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. The new Maturity Date will be **SEPTEMBER 1, 2064**.

3)  Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4)  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5)  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is

LOAN MODIFICATION AGREEMENT - Flex Mod (3
Page 2

obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note.

(b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6)   Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

LOAN MODIFICATION AGREEMENT - Flex Mod (3

Page 3

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

(g)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address  and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

By checking this box, Borrower also consents to being contacted by text messaging ☐

In Witness Whereof, I have executed this Agreement.

Borrower: ANTHONY C. TORDIGLIONE          Date

Borrower: CYNTHIA R. TORDIGLIONE *signing solely to acknowledge this          Date
Agreement, but not to incur any personal liability for the debt

_____[Space Below This Line for Acknowledgments]_____

## BORROWER ACKNOWLEDGMENT

State of **TEXAS**

County of *PARKER*

This instrument was acknowledged before me, *Megan Anthony* (Notary Public Name)
for **ANTHONY C. TORDIGLIONE, CYNTHIA R. TORDIGLIONE**:
☐ personally known to me or ☑ proved to me through *TX DL* (description
of Identification Card or Document) to be the person(s) whose name(s) is/are subscribed to the foregoing
instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration
therein expressed.

☐ This notarial act was an online notarization using communication technology

Given under my hand and seal of office this *1* day of *October* (month), 20 *24*
(year)

Notary Public's Signature

Notary Printed Name: *Megan Anthony*

MEGAN ANTHONY
NOTARY PUBLIC
STATE OF TEXAS
ID # 15188505-1
My Comm. Expires 12-13-2026

LOAN MODIFICATION AGREEMENT - Flex Mod (31



Mortgage Electronic Registration Systems, Inc., ("MERS"), is a separate corporation that is acting solely as a nominee for lender and lender's successors and assigns

By ......................................................

## Lena Pozhitsky

**OCT 0 4 2024**          ## Assistant Secretary

Date

[Space Below This Line for Acknowledgments]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA      )
County of SAN DIEGO      )

On **OCT 0 4 2024** before me ___Carlos Lopez___ Notary Public, personally appeared ___LENA POZHITSKY___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ................................................... (Seal)
Signature of Notary Public

CARLOS LOPEZ
Notary Public - California
San Diego County
Commission # 2439829
My Comm. Expires Feb 28, 2027

LOAN MODIFICATION AGREEMENT - Flex Mod (3179

In Witness Whereof, the Lender has executed this Agreement.

**GUILD MORTGAGE COMPANY LLC**

By Lena Pozhitsky        (print name)        **OCT 0 4 2024**
Loss Mitigation Manager  (title)                Date

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA          )
County of SAN DIEGO          )

On **OCT 0 4 2024** before me _Carlos Lopez_ Notary Public, personally appeared ____LENA POZHITSKY____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____                                    (Seal)
          Signature of Notary Public

CARLOS LOPEZ
Notary Public - California
San Diego County
Commission # 2439829
My Comm. Expires Feb 28, 2027

LOAN MODIFICATION AGREEMENT - Flex Mod

Date: **SEPTEMBER 12, 2024**
Loan Number: ███████
Lender: **GUILD MORTGAGE COMPANY LLC**

Borrower: **ANTHONY C. TORDIGLIONE, CYNTHIA R. TORDIGLIONE**

Property Address: **178 SAMS LANE, ALEDO, TEXAS 76008**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____   _____
Borrower                                                                                                                                    Date
ANTHONY C. TORDIGLIONE

_____   _____
Borrower                                                                                                                                    Date
**CYNTHIA R. TORDIGLIONE** *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt

LOAN MODIFICATION AGREEMENT - Flex Mod





Page 8

Date: **SEPTEMBER 12, 2024**
Loan Number: █████████
Lender: **GUILD MORTGAGE COMPANY LLC**

Borrower: **ANTHONY C. TORDIGLIONE, CYNTHIA R. TORDIGLIONE**

Property Address: **178 SAMS LANE, ALEDO, TEXAS 76008**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **GUILD MORTGAGE COMPANY LLC**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period .

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

ANTHONY C. TORDIGLIONE _____     Date

CYNTHIA R. TORDIGLIONE **\*signing solely to acknowledge this Agreement, but not to incur any personal     Date
liability for the debt**

LOAN MODIFICATION AGREEMENT - Flex Mod (3179) █████████      3█████████

Page 9

Lender: **GUILD MORTGAGE COMPANY LLC**

Loan Number: ███████
Loan Amount: **$515,326.66**

Borrower: **ANTHONY C. TORDIGLIONE**
Address: **178 SAMS LANE, ALEDO, TEXAS 76008**

## TEXAS LOAN AGREEMENT NOTICE

Section 26.02(b) of the Texas Business and Commerce Code provides as follows:

> A Loan agreement in which the amount involved in the Loan agreement exceeds $50,000.00 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.

You are hereby notified that:

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PARTIES.**

**LENDER: GUILD MORTGAGE COMPANY LLC**

Lena Pozhitsky
Loss Mitigation Manager

By: _____     10/04/24
                                          Date

Borrower: **ANTHONY C. TORDIGLIONE** _____     Date



**Exhibit "A"**
**Legal Description**

LOT 7, RANCHES OF BEAR CREEK, PHASE III, AN ADDITION IN PARKER COUNTY, TEXAS, ACCORDING TO PLAT AS RECORDED IN PLAT CABINET B, SLIDE 655, PLAT RECORDS, PARKER COUNTY, TEXAS.

201817981   CORRECT   Total Pages: 25

# DEED OF TRUST

# CORRECTION AFFIDAVIT

# UNDER SEC. 5.028, TEXAS PROPERTY CODE

**Date:  July 20, 2018**                                    **GF #:** [          ]

**Description of Original Instrument:   DEED OF TRUST dated April 12, 2018 executed by ANTHONY C. TORDIGLIONE, married and CYNTHIA R. TORDIGLIONE, his wife, to GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION** filed for record April 17, 2018, under County Clerk's File #201808761, recorded in the Official Public Records of PARKER County, Texas. (copy of the recorded Deed of Trust  is attached hereto and made a part hereof for all purposes).

**Affiant:**

Affiant on oath swears that the following statements are true and correct and are within the personal knowledge of Affiant:

1. My full name is **KAY SEABOLT**, and I am over the age of Eighteen (18) years and qualified to make this Affidavit.
2. I am employed as an Escrow Officer at Capital Title of Texas, LLC. I have investigated the transaction relating to the Original Instrument and have personal knowledge of the facts relevant to the correction of the Original Instrument, having reviewed the associated documents.
3. I am   making this Affidavit as a correction instrument pursuant to Section 5.028 of the Texas Property Code, with regard to the following non-material errors in the Original Instrument:

**TO CORRECT THE RENEWAL AND EXTENSION EXHIBIT (TEXAS CONSTITUTION ARTICLE XVI, SECTION 50 (f)(2) ) THAT WAS INCORRECT AT TIME OF ORIGINAL FILING.**

The Original Instrument should correctly read as follows with respect to the non-material error described above, this being a non-material change to the Original Instrument:

201817981    07/20/2018 12:26:51 PM    Page 2 of 25

**THE CORRECT RENEWAL AND EXTENSION EXHIBIT(TEXAS CONSTITUTION ARTICLE XVI, SECTION 50 (f)(2) ) IS ATTACHED HERETO AND MADE A PART HEREOF.**

I have given notice of this correction of the Original Instrument by sending a copy of this Correction Affidavit by first class mail to each party to the Original Instrument in accordance with Section 5.028 (d)(2), Texas Property Code.



KAY SEABOLT - AFFIANT

THE STATE OF TEXAS            §
                             §
COUNTY OF COLLIN             §

The foregoing instrument was acknowledged before me on the 20th day of July, 2018, by **KAY SEABOLT.**

NOTARY PUBLIC, STATE OF TEXAS

MELINDA DEMERY
Notary Public
State of Texas
ID # 6394181
My Comm. Expires 05-24-2021

201817981    07/20/2018 12:26:51 PM    Page 3 of 25

## RENEWAL AND EXTENSION EXHIBIT
### (TEXAS CONSTITUTION ARTICLE XVI, SECTION 50(f)(2))

The provisions herein are contractual and are expressly incorporated into the terms and provisions of the Deed of Trust dated of even date herewith, in connection with a refinance loan under Section 50(f)(2), Article XVI of the Texas Constitution:

    (A) the refinance was not closed before the first anniversary of the date the extension of credit was closed;

    (B) the refinanced extension of credit does not include the advance of any additional funds other than:

    (i) funds advanced to refinance a debt described by Subsections (a)(1) through (a)(7) of Section 50 Article XVI of the Texas Constitution; or

    (ii) actual costs and reserves required by the lender to refinance the debt;

    (C) the refinance of the extension of credit is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the refinance of the extension of credit is made; and

    (D) Lender provided the owner, on a separate document not later than the third business day after the date the owner submitted the loan application to the lender and at least 12 days before the date the refinance was closed, the written notice entitled "NOTICE CONCERNING REFINANCE OF EXISTING HOME EQUITY LOAN TO NON-HOME EQUITY LOAN UNDER SECTION 50(F)(2), ARTICLE XVI, TEXAS CONSTITUTION", and Borrower acknowledges receipt of same within the timeframe described herein.

In addition, the Note is in renewal and extension, but not in extinguishment, of the indebtedness, whether one or more, described as follows:

Deed of Trust from Anthony C. Tordiglione and spouse, Cynthia A. Tordiglione to Adam L. Feriend, Trustee, for the benefit of Weatherford National Bank, securing a note n the original princopal sum of $75,000.00, dated February 7, 2006, filed February 22, 2006, recorded in Volume 2411, Page 1720, Real Property Records, Parker County, Texas, and all terms and provisions contained therein, including, but not limited to, any additional indebtedness secured by said instrument.

Home Equity Deed of Trust dated April 25, 2007, filed April 30, 2007, recorded in Clerk's File No. 2007-50408, Real Property Records, Parker County, Texas, from Anthony C. Tordiglione, a married person, to CTC Real Estate Services, Trustee, securing MERS, Inc., as nominee for Countrywide Home Loans, Inc. dba America's Wholesale Lender in the payment of a note in the principal sum of $466,375.00.

Together with Texas Home Equity Affidavit and Agreement, dated April 25, 2007, filed April 30, 2007, recorded in Clerk's File No. 2007-50409, Real Property Records, Parker County, Texas.

Said Note and Lien subsequently assigned to The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2007-9, filed November 13, 2017, recorded in Clerk's File No. 201728139, Real Property Records, Parker County, Texas.

---

Renewal and Extension Exhibit (Texas Constitution Article XVI, Section 50(f)(2))

1

Lender is expressly subrogated to all rights, liens, equities and remedies securing the original holder(s) of the above debt(s) and the original lien(s) securing the same are renewed and extended to the date of maturity of the Note secured by the Security Instrument in renewal and extension of the indebtedness. Borrower acknowledges that the lien(s) securing the prior debt(s) is valid, that the lien(s) subsists against the Property, and that by this instrument it is renewed and extended in full force until the Note is paid, even though the original lien(s) is released and not assigned to Lender.

**Renewal and Extension Exhibit (Texas Constitution Article XVI, Section 50(f)(2))**

2



201808761   DEEDTRUST   Total Pages: 20

201817981   07/20/2018 12:26:51 PM   Page 5 of 25

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# DEED OF TRUST

After recording please return to:
GUILD MORTGAGE COMPANY -
ATTN: DMD

5898 COPLEY DRIVE
SAN DIEGO, CA 92111

———————————[Space Above This Line For Recording Data]———————————

Loan No.: ▓▓▓▓▓▓▓

MIN: ▓▓▓▓▓▓▓3370

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated  April 12, 2018, together with all Riders to this document.

(B)    "Borrower" is ANTHONY C. TORDIGLIONE, MARRIED AND Cynthia R Tordiglione, HIS WIFE. Borrower is the grantor under this Security Instrument.

(C)    "Lender" is GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION. Lender is a corporation organized and existing under the laws of  CALIFORNIA. Lender's address is  5898 COPLEY DRIVE, SAN DIEGO, CA  92111. Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D)    "Trustee" is CHRIS PEIRSON. Trustee's address is  4400 ALPHA ROAD, DALLAS, TX  75244.

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                                    Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                                          Page 1 of 18      Modified by Compliance Source 14301TX 08/00 Rev. 11/17
©2000-2017, The Compliance Source, Inc.



(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ████████████

(F)    "Note" means the promissory note signed by Borrower and dated April 12, 2018. The Note states that Borrower owes Lender  Four Hundred Twenty Four Thousand One Hundred  and 00/100ths Dollars (U.S. $424,100.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  May 1, 2048.

(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Biweekly Payment Rider
☐ 1-4 Family Rider    ☐ Revocable Trust Rider
☒ Other(s) [specify] Renewal and Extension Exhibit (TX)

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "Escrow Items" means those items that are described in Section 3.

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to,

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                        Page 2 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
©2000-2017, The Compliance Source, Inc.



or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the:

County                     of          PARKER
[Recording Jurisdiction]         [Name of Recording Jurisdiction]
LOT 7, RANCHES OF BEAR CREEK, PHASE III, AN ADDITION IN PARKER COUNTY, TEXAS, ACCORDING TO PLAT AS RECORDED IN PLAT CABINET B, SLIDE 655, PLAT RECORDS, PARKER COUNTY, TEXAS.

which currently has the address of 178 SAMS LANE
                              [Street]
     **ALEDO**               , Texas    76008                    ("Property Address").
     [City]                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.          Page 3 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
                                                    ©2000-2017, The Compliance Source, Inc.



successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument        Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                    Page 4 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
©2000-2017, The Compliance Source, Inc.



repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                    Page 5 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
                                                              ©2000-2017, The Compliance Source, Inc.



RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                    Page 6 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
                                                               ©2000-2017, The Compliance Source, Inc.



All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                          Page 7 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
                                                                    ©2000-2017, The Compliance Source, Inc.



payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                          Page 8 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17



non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                    Page 9 of 18     Modified by Compliance Source 14301TX 08/00 Rev. 11/17
                                                               ©2000-2017, The Compliance Source, Inc.



this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                               Page 10 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
©2000-2017, The Compliance Source, Inc.



201808761  04/17/2018 03:44:53 PM  Page 11 of 20

201817981  07/20/2018 12:26:51 PM  Page 15 of 25

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, and property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.          Page 11 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
©2000-2017, The Compliance Source, Inc.



201808761 . 04/17/2018 03:44:53 PM · Page 12 of 20

201817981   07/20/2018 12:26:51 PM    Page 16 of 25

in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:   (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  Borrower's Copy.  Borrower shall be given one copy of the Note and of this Security Instrument.

18.  Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                    Page 12 of 18   Modified by Compliance Source 14301TX 08/00 Rev. 11/17
                                                                    ©2000-2017, The Compliance Source, Inc.



Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                          Page 13 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
©2000-2017, The Compliance Source, Inc.



201808761    04/17/2018 03:44:53 PM    Page 14 of 20

201817981    07/20/2018 12:26:51 PM    Page 18 of 25

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee,

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                        Page 14 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17



add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing.   Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct.   Trustee shall not be liable for any act or omission unless such act or omission is willful.

25.   **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property.   Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26.   **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27.   **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐      Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property.   The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐      Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒      Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference.   Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐      Acknowledgment of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds.   Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead.   Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28.   **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien,

Texas Deed of Trust—Single Family—Fannie Mac/Freddie Mac Uniform Instrument            Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                        Page 15 of 18     Modified by Compliance Source 14301TX 08/00 Rev. 11/17
©2000-2017, The Compliance Source, Inc.



201808761    04/17/2018 03:44:53 PM    Page 16 of 20

201817981    07/20/2018 12:26:51 PM    Page 20 of 25

complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it. .

_____ (Seal)          _____ (Seal)
ANTHONY C. TORDIGLIONE          -Borrower       Cynthia R. Tordiglione          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument        Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                      Page 16 of 18    Modified by Compliance Source 14301TX 08/00 Rev. 11/17
                                                                  ©2000-2017, The Compliance Source, Inc.

201808761      04/17/2018 03:44:53 PM      Page 17 of 20

201817981      07/20/2018 12:26:51 PM      Page 21 of 25

## ACKNOWLEDGMENT

State of _Texas_

County of _Tarrant_

§
§
§

This instrument was acknowledged before me on _April 12 2018_ by ANTHONY C. TORDIGLIONE.

Signature of Officer

_Justin B Pierce_
Printed Name

_Notary_
Title of Officer

My Commission Expires: _3/21/18_

JUSTIN B. PIERCE
Notary Public
State of Texas
ID # 124094951
My Comm. Expires 03-21-2022

(Seal)

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.                        Page 17 of 18     Modified by Compliance Source 14301TX 08/00 Rev. 11/17
©2000-2017, The Compliance Source, Inc.

201808761    04/17/2018 03:44:53 PM    Page 18 of 20

201817981    07/20/2018 12:26:51 PM    Page 22 of 25

## ACKNOWLEDGMENT

State of _Texas_                          §

County of _Tarrant_                       §
                                          §

This instrument was acknowledged before me on _April 12 2018_ by Cynthia R. Tordiglione.

_____
Signature of Officer

_Justin B. Pierce_
Printed Name

_Notary_
Title of Officer

My Commission Expires: _3/21/18 2022_

(Seal)

**JUSTIN B. PIERCE**
Notary Public
State of Texas
ID # 124094951
My Comm. Expires 03-21-2022

Loan Originator Organization: GUILD MORTGAGE COMPANY, NMLSR ID:
Individual Loan Originator's Name: TRACEY LYNN LINDSEY, NMLSR ID:

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument       Form 3044 1/01 (rev. 10/17)
MERS Modified
The Compliance Source, Inc.        Page 18 of 18   Modified by Compliance Source 14301TX 08/00 Rev. 11/17
                                                              ©2000-2017, The Compliance Source, Inc.

Loan Originator Organization: GUILD MORTGAGE COMPANY, NMLSR ID: ███

Individual Loan Originator's Name: TRACEY LYNN LINDSEY, NMLSR ID: ███

Loan No.: ███

# RENEWAL AND EXTENSION EXHIBIT

This Renewal and Extension Exhibit is incorporated into and shall amend and supplement the Security Instrument of even date herewith. The Note is in renewal and extension, but not in extinguishment, of the indebtedness, whether one or more, described as follows:

Lender is expressly subrogated to all rights, liens, equities and remedies securing the original holder(s) of the above debt(s) and the original lien(s) securing the same are renewed and extended to the date of maturity of the Note secured by the Security Instrument in renewal and extension of the indebtedness. Borrower acknowledges that the lien(s) securing the prior debt(s) is valid, that the lien(s) subsists against the Property, and that by this instrument it is renewed and extended in full force until the Note is paid, even though the original lien(s) is released and not assigned to Lender.

This renewal and extension is not a refinance of a debt any portion of which is an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution.

In addition to the refinance of principal and any interest, if Lender is advancing all or a portion of the costs necessary to refinance debt on the Property, Borrower acknowledges that these costs are reasonable and necessary costs to refinance such debt. Borrower has received no funds from this Loan, but only the benefit of those sums advanced for the payment of 1) principal and any interest on loans being refinanced, 2) any reasonable and necessary closing costs, and 3) any refund to Borrower of closing costs escrowed in connection with the Loan advanced by Borrower. If any portion of the Loan secures a debt for work or material used in constructing improvements on the Property, Borrower understands that funds not used in such construction, if any, must first be used to reduce the unpaid principal of the Loan or, at Lender's option, the Note must be modified to evidence the actual funds advanced.

Texas Renewal and Extension Exhibit                                                            Closing
The Compliance Source, Inc.                        Page 1 of 1                       04505TX 08/98 Rev. 02/07
www.compliancesource.com                                                    ©2007, The Compliance Source, Inc.

201817981 07/20/2018 12:26:51 PM Page 24 of 25
201808761 04/17/2018 03:44:53 PM Page 20 of 20

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS



201808761
04/17/2018 03:44:53 PM
Fee: $103.00
Jeane Brunson, County Clerk
Parker County, Texas
DEEDTRUST

**FILED AND RECORDED** 201817981   07/20/2018 12:26:51 PM    Page 25 of 25
OFFICIAL PUBLIC RECORDS



201817981
07/20/2018 12:26:51 PM
Fee: $118.00
Jeane Brunson, County Clerk
Parker County, Texas
CORRECT

6

TS No.: ██████████
MERS MIN No.: ██████ 370
MERS Phone No. █████
MERS Address: P.O. Box 2026, Flint, MI 48501-2026

Space above this line for recorders use

## ASSIGNMENT OF DEED OF TRUST

Know that, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS A NOMINEE FOR GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS, "Assignor", for value received and other good and valuable consideration paid by Guild Mortgage Company LLC , "Assignee", the receipt and sufficiency of which is hereby acknowledged, the Assignor does hereby grant, bargain, sell, assign, transfer and convey unto the Assignee the following described Deed of Trust, duly recorded in the office of real property records in the County of PARKER, State of Texas, as follows:

| | |
|---|---|
| **Instrument Dated** | 4/12/2018 |
| **Original Borrower(s)** | ANTHONY C. TORDIGLIONE, MARRIED AND CYNTHIA R TORDIGLIONE, HIS WIFE |
| **Original Principal Balance** | $424,100.00 |
| **Original Beneficiary** | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS A NOMINEE FOR GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS |
| **Recording Information** | Instrument No. 201808761, Volume N/A, Page N/A |
| **Property Address** | 178 SAMS LANE, ALEDO, TX 76008 |
| **Legal Description** | LOT 7, RANCHES OF BEAR CREEK, PHASE III, AN ADDITION IN PARKER COUNTY, TEXAS, ACCORDING TO PLAT AS RECORDED IN PLAT CABINET B, SLIDE 655, PLAT RECORDS, PARKER COUNTY, TEXAS. |

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

This Assignment is made without recourse to Assignor and without representation or warranty by Assignor, express or implied.

Executed on: 10/07/2025

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GUILD MORTGAGE COMPANY LLC F/K/A GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND
- ASSIGNS

By: _____ Griselda Olivia Haas, Assistant Secretary _____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California
County of San Diego

On 10/07/2025 before me, Carlos Silva Jr., Notary Public, personally appeared Griselda Olivia Haas who proved to me on the basis of satisfactory evidence to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature (s) on the instrument the person (s), or the entity upon behalf of which the person (s) acted, executed the instrument.

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

WITNESS my hand and official seal.

Signature _____ (Seal)

CARLOS SILVA JR.
Notary Public · California
San Diego County
Commission # 2433323
My Comm. Expires Jan 6, 2027

Prepared by:
McCarthy & Holthus, LLP
1255 West 15th Street, Suite 1060
Plano, TX 75075

After recording return to:
McCarthy & Holthus, LLP
1255 West 15th Street, Suite 1060
Plano, TX 75075
MH No.: TX-25-122897-POS

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Lila Deakle*

**202527997**
**10/15/2025 10:52:44 AM**
**Fee: $30.00**
**Lila Deakle, County Clerk**
**Parker County, Texas**
**ASSIGNMENT**



**Guild**
MORTGAGE COMPANY

| | | | LOAN INFORMATION | | | | |
|---|---|---|---|---|---|---|---|
| Loan Number | Debtors Name | Bankruptcy Filing Date | Bankruptcy Case | Chapter | Investor | Comments |
| | TORDIGLIONE, ANTHONY | 11/3/2025 | 25-44309 | 13 | FNMA | |

| | | | | PAYMENT CHANGE TABLE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Escrow Payment Date/Pmt Change | Principal & Interest Amount | Taxes | Property Insurance | PMI Insurance | Trust Shortage | Misc Insurance | Late Payment | Notes | Code Filed |
| 12/1/2025 | $1,273.52 | $1,827.66 | $773.92 | $0.00 | $0.00 | $0.00 | $3,875.10 | First Post Pmt | |
| | | | | | | | | | |
| | | | | | | | | | |

| | | | | | PAYMENT HISTORY | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Due Date | Transaction Date | Amount Due | Amount Paid | Late Charge/Fees | Suspense | Suspense Total | Total Due | Contractual Post Petition Pmts | Comments |
| 12/1/2025 | due | 3875.10 | | | | 0.00 | 3875.10 | | |
| 1/1/2026 | due | 3875.10 | | | | 0.00 | 3875.10 | | |
| 2/1/2026 | due | 3875.10 | | | | 0.00 | 3875.10 | | |
| 3/1/2026 | due | 3875.10 | | | | 0.00 | 3875.10 | | |
| | | | | | | | 15500.40 | Post Petition Payment Amount Due | |
| | | | Total Late Charge | 0.00 | Total Suspense | 0.00 | 0.00 | Suspense | |
| | | | | | | | 0.00 | NSF/Late Charge | |
| | | | | | | | 15500.40 | Total Arrearage | |