Clayton L. Everett | State Bar No. 24065212
NORRED LAW, PLLC | 515 E. Border Street | Arlington, Texas 76010
Telephone: (817) 704-3984 | clayton@norredlaw.com
Proposed Attorney for Debtor

# United States Bankruptcy Court
## Northern District of Texas
### Fort Worth Division

|  |  |
|---|---|
| In re: | Case No. 25-44309-elm11 |
| Anthony Charles Tordiglione, | |
| Debtor, | Chapter 11 |

### SUBCHAPTER V PLAN OF REORGANIZATION
### DESIGNED FOR PARTIAL ASSET LIQUIDATION

Anthony Charles Tordiglione, debtor and debtor-in-possession (the "Debtor"), proposes this amended Subchapter V plan of reorganization (the "Plan") under chapter 11 of the Bankruptcy Code. This Plan is designed to replace conclusory valuation and sale language with a claim-based funding structure, sale milestones, reserves, default remedies, and the statutory elements required for confirmation under 11 U.S.C. §§ 1129, 1190, and 1191.

## ARTICLE I - OVERVIEW, PURPOSE, AND PLAN STRUCTURE

### 1.01 Purpose of the Plan

The Plan is an asset-sale and cure plan. It preserves the Debtor's operating vineyard, wine, and ranch enterprise while authorizing sales of nonessential real property sufficient to pay allowed secured claims, cure arrearages, fund administrative expenses, reserve for disputed tax claims, and pay allowed general unsecured claims in full or as otherwise required by the Bankruptcy Code.

**1.02 Case Status and Claims Bar Dates**

The case was filed on November 3, 2025, later converted to chapter 11/Subchapter V. The non-governmental claims bar date was June 18, 2026. The governmental claims bar date is October 6, 2026. Accordingly, this Plan treats filed claims, claims deemed filed by the Debtor's schedules unless scheduled as disputed, contingent, or unliquidated, and governmental claims timely filed or amended through the governmental claims bar date, subject in each instance to allowance, objection, estimation, reconciliation, or further order of the Court.

**1.03 Operating Reality and Need for Asset-Sale Funding**

The Plan does not rely on current operations to amortize the existing secured debt stack. Schedule I/J reflects combined monthly income of $8,809.80 and monthly expenses of $9,754.92, resulting in negative monthly net income of $945.12. The Plan therefore funds creditor treatment primarily from real property sale proceeds and reserves, while allowing operations to stabilize after debt reduction.

**1.04 Principal Sources of Plan Funding**

1. Sale of sufficient Hico acreage to produce net proceeds adequate to pay or materially reduce the Zions/CGB LOC component, cure and reinstate the retained Zions/CGB mortgage/term-loan component, satisfy Hico/Erath/Propel tax liens required for closing, fund IRS reserves, sale costs, administrative expenses, and a limited operational stabilization reserve.

2. Replat, partition, or other lawful separation and sale of the Parker County/Bear Creek vacant lot or acreage to pay First Bank Texas, related ad valorem tax liens, closing costs, and remaining cure/reserve obligations.

3. Continuation of ordinary business operations and retention of the core vineyard/ranch/wine assets, including the retained portion of Hico acreage and Amore Wines of Texas, LLC operations.

4. Any surplus proceeds, recoveries, refunds, tax adjustments, or retained causes of action.

## ARTICLE II - DEFINITIONS AND RULES OF CONSTRUCTION

| Defined Term | Meaning |
|---|---|
| Allowed Claim | A claim, or portion of a claim, that is allowed by the Bankruptcy Code, by final order, by the claims register if no objection is filed, or by this Plan and confirmation order. |
| Claim Objection Deadline | The later of 120 days after the Effective Date or 60 days after the applicable claims bar date, unless extended by Court order. |
| Confirmation Date | The date on which the Court enters an order confirming this Plan. |
| Effective Date | The first business day that is 14 days after the Confirmation Date unless the confirmation order is stayed, or such other date stated in the confirmation order. |
| Hico Property | The real property generally identified as 8216 County Road 539, Hico, Texas 76457, including the 560-acre tract scheduled at $10,000,000. |
| Parker Property | The real property generally identified as 178 Sams Lane, Aledo, Texas 76008, including the residence tract and the separate or to-be-separated vacant lot/acreage associated with Lot 8/Ranches of Bear Creek or other Parker County acreage. |
| Net Sale Proceeds | Gross sale proceeds minus ordinary and Court-approved closing costs, title costs, survey costs, recording fees, broker commissions, prorated taxes, senior liens required to close, and other Court-approved sale expenses. |
| Disputed Claim Reserve | Cash or sale proceeds segregated pending allowance, disallowance, estimation, settlement, or further order of the Court concerning a disputed claim. |

## ARTICLE III - BACKGROUND AND BRIEF HISTORY OF BUSINESS OPERATIONS

The Debtor is engaged in agricultural and business operations centered on grape farming, wine production, and livestock/ranch activities through Amore Wines of Texas, LLC and Bull Lion Ranch. The schedules value the Debtor's total real property at $12,200,000 and total scheduled property at $13,531,000. The operating entities and farm assets include scheduled interests in Amore Wines of Texas, LLC with an estimated liquidation value of $750,000, livestock, grapes on the vine, farm equipment, and related ranch/vineyard supplies.

Current business income is positive on an operating basis but inadequate to service the prepetition secured debt structure. The Plan therefore uses a controlled partial liquidation of

nonessential acreage, rather than distressed liquidation of the entire business, to pay creditors and

preserve the Debtor's ability to generate future income.

## ARTICLE IV - ASSETS, CLAIMS, AND LIQUIDATION ANALYSIS

### 4.01 Scheduled Asset Summary

| Asset Category | Scheduled Value |
|---|---|
| Aledo residence/5 acres at 178 Sams Lane | $1,500,000.00 |
| Hico homestead/560 acres at 8216 County Road 539 | $10,000,000.00 |
| Parker/Bear Creek or additional 178 Sams Lane acreage | $700,000.00 |
| Total scheduled real property | $12,200,000.00 |
| Total scheduled personal property | $1,331,000.00 |
| Total scheduled property | $13,531,000.00 |

### 4.02 Claims Register Summary

The claims register reflects 20 filed claims, total claims of $4,030,121.19, total secured claims of $3,678,349.55, and priority claims of $7,318.16. The values below are for plan classification and reserve purposes only and remain subject to claim objection, reconciliation, amendment by governmental units through their bar date, and further Court order.

| Claim | Creditor | Filed Amount | Secured | Priority | Plan Note |
|---|---|---|---|---|---|
| 1 | LVNV Funding, LLC | $241.72 | $0.00 | $0.00 | General unsecured |
| 2 | LVNV Funding, LLC | $4,055.86 | $0.00 | $0.00 | General unsecured |
| 3 | Resurgent Receivables, LLC | $2,191.68 | $0.00 | $0.00 | General unsecured |
| 4 | Parker CAD | $14,985.64 | $14,985.64 | $0.00 | Secured ad valorem tax |
| 5 | Guild Mortgage Company LLC | $541,062.09 | $541,062.09 | $0.00 | Secured mortgage; arrearage $52,084.81 per claim register |
| 6 | American Express National Bank | $17,194.35 | $0.00 | $0.00 | General unsecured |
| 7 | American Express National Bank | $16,384.28 | $0.00 | $0.00 | General unsecured |
| 8 | Hico ISD | $12,859.82 | $12,859.82 | $0.00 | Secured ad valorem tax |
| 9 | Hico ESD | $1,282.04 | $1,282.04 | $0.00 | Secured ad valorem tax |

| 10 | Internal Revenue Service | $138,937.76 | $120,136.63 | $7,318.16 | Disputed secured/priority/general tax claim; reserve pending allowance |
|---|---|---|---|---|---|
| 11 | County of Erath | $6,466.35 | $6,466.35 | $0.00 | Secured ad valorem tax |
| 12 | Midland Credit Management, Inc. | $2,073.66 | $0.00 | $0.00 | General unsecured |
| 13 | Midland Credit Management, Inc. | $1,810.77 | $0.00 | $0.00 | General unsecured |
| 14 | Pinnacle Credit Services, LLC | $2,766.19 | $0.00 | $0.00 | General unsecured |
| 15 | Propel Financial Services | $22,907.62 | $22,907.62 | $0.00 | Secured tax lender |
| 16 | Zion First National Bank - Mortgage | $600,000.00 | $600,000.00 | $0.00 | Potentially duplicative or overlapping with Claim No. 19; no duplicate recovery permitted. See Class 7 treatment |
| 17 | First Bank Texas | $260,000.00 | $260,000.00 | $0.00 | Allowed at filed/amended claim amount, subject to claim objection/reservation |
| 18 | Zion First National Bank | $700,000.00 | $700,000.00 | $0.00 | Potentially duplicative or overlapping with Claim No. 19; no duplicate recovery permitted. See Class 7 treatment. |
| 19 | CGB Agrifinancial Services, Inc. | $1,658,649.36 | $1,658,649.36 | $0.00 | Secured by real estate per proof of claim |
| 20 | Aidvantage/Dept. of Education | $26,252.00 | $0.00 | $0.00 | General unsecured/student loan; discharge only as permitted by applicable law |

## 4.03 Liquidation Analysis and Best-Interests Treatment

The Debtor estimates that a chapter 7 liquidation would generate proceeds principally from the Hico Property, Parker Property, nonexempt personal/business assets, and any recoveries. A chapter 7 liquidation would likely require trustee compensation, broker commissions, sale expenses, tax prorations, litigation over exemptions, lien-priority disputes, tax claims, and potential delay. This Plan is intended to satisfy the best-interests test because all allowed secured claims are either paid, cured, reinstated, reserved, or otherwise treated as required by the Bankruptcy Code, and allowed general unsecured claims are paid 100% of

allowed principal, plus any additional interest or amount required by final order to satisfy 11 U.S.C. § 1129(a)(7).

| Item | Amount | Treatment/Comment |
|---|---|---|
| Scheduled total property value | $13,531,000.00 | Schedule A/B |
| Scheduled total real property value | $12,200,000.00 | Primary source of plan funding |
| Filed claims register total | $4,030,121.19 | Subject to allowance and reserves |
| Filed secured claims total | $3,678,349.55 | Paid, cured, reinstated, reserved, or otherwise treated |
| Filed priority claims total | $7,318.16 | Paid as required after allowance |
| Estimated filed general unsecured pool | $344,453.48 | Estimated filed/deemed-filed general unsecured pool: approximately $344,453.48, subject to reconciliation of the schedules, claims register, deemed-filed claims, disputed tax claims, and any duplicate or amended claims. |

## ARTICLE V - CLASSIFICATION AND TREATMENT OF CLAIMS

A claim is classified only to the extent it is an Allowed Claim. The Debtor reserves all objections, defenses, setoffs, counterclaims, rights to seek estimation, rights to challenge lien extent/priority/validity, rights to object to fees/default interest, and rights to reconcile tax claims. No provision of this Plan is an admission of liability, lien validity, lien priority, tax liability, or collateral value except to the extent expressly stated in a final confirmation order or other final order.

| Class | Class Name | Claims Included | Treatment |
|---|---|---|---|
| 1 | Administrative Expenses | Court-approved administrative expenses, Subchapter V Trustee fees, Debtor counsel fees, broker/sale professional fees | Paid in full from Net Sale Proceeds or other available cash on the later of the Effective Date, allowance, or closing of the sale that creates proceeds; sale professionals paid from closing only if approved or otherwise authorized. |
| 2 | Priority Tax and Other Priority Claims | IRS priority portion and any other allowed §507(a) priority claims | Paid in full as required by the Bankruptcy Code from sale proceeds or reserve after allowance/reconciliation; disputed amounts reserved pending final |

| | | | allowance. |
|---|---|---|---|
| 3 | Secured Tax Liens | Parker CAD, Hico ISD, Hico ESD, County of Erath, Propel, and similar statutory tax liens | Paid in full from the sale escrow for the collateral to which each lien attaches, or otherwise paid/reserved to deliver clean title and comply with state law and the Bankruptcy Code. |
| 4 | Guild Mortgage Company LLC | Claim No. 5 secured by 178 Sams Lane residence; filed amount $541,062.09 and arrearage $52,084.81 | Retain lien. Cure allowed prepetition arrears and any allowed postpetition/default amounts necessary to maintain/reinstate. Debtor resumes/continues regular contractual payments directly unless modified by agreement or order. |
| 5 | Zion First National Bank - Claim No. 16 | Filed $600,000 secured mortgage/HELOC claim on Hico Property | See Claim No. 19. |
| 6 | Zion First National Bank - Claim No. 18 | Filed $700,000 secured claim | See Claim No. 19. |
| 7 | CGB Agrifinancial Services, Inc. | Claim No. 19 filed in the amount of $1,658,649.36, secured by real estate per proof of claim | Claim No. 19 is treated as part of the Zions/CGB secured obligation package and shall not receive duplicate recovery for amounts also asserted in Claim Nos. 16 and/or 18. The LOC component shall be paid or materially paid down from Hico Net Sale Proceeds in exchange for appropriate partial releases of sold acreage. The remaining mortgage/term-loan component shall be cured, reinstated, and maintained according to the applicable loan documents, except as modified by agreement, confirmation order, sale order, or further order of the Court. Lien rights will be retained. |
| 8 | First Bank Texas | Claim No. 17 filed/amended in the amount of $260,000; secured by Parker/Bear Creek property per amended claim | Paid from Parker sale proceeds at the allowed amount. Debtor reserves rights regarding asserted amounts above the filed/amended claim, attorney fees, interest, default remedies, and settlement enforcement issues. |
| 9 | IRS Disputed Secured/General Tax Claim | Claim No. 10 filed at $138,937.76, including $120,136.63 secured, $7,318.16 priority, and $11,482.97 general unsecured | Debtor will reserve for the filed secured and priority amounts pending reconciliation, amended returns, objection, settlement, or further Court order. Allowed amounts will be paid according to their final allowed |

| | | | priority/security status. |
|---|---|---|---|
| 10 | Allowed General Unsecured Claims | Filed, deemed filed, or allowed unsecured claims including credit cards, student loan claims, and unsecured portions of tax claims | Paid 100% of allowed principal from sale surplus and reserves after senior claims, sale costs, and administrative expenses; postpetition interest only to the extent required by the Bankruptcy Code or final order. |
| 11 | Unfiled/Deemed Filed/Notice-Only Claims | Creditors listed in schedules or matrix that did not file a proof of claim | No distribution unless the claim is timely filed, deemed filed under §1111(a) and Rule 3003, allowed by Court order, or otherwise required by law. Nothing in this Plan disallows a claim deemed filed by schedules unless separately objected to and disallowed. |
| 12 | Equity/Interests | Debtor retained property interests after creditor treatment and reserves | Revest in the Debtor on the Effective Date subject to Plan obligations, liens preserved by the Plan, sale obligations, and Court-retained jurisdiction. |

## ARTICLE VI - MEANS OF IMPLEMENTATION AND SALE PROCEDURES

### 6.01 Feasibility, Hico Sale Structure, and Zions/CGB Waterfall

This Plan is feasible because it does not depend upon the Debtor's depressed short-term operating income to fund creditor distributions. The Debtor's amended schedules reflect total real estate value of approximately $12,200,000.00 and total scheduled property of approximately $13,531,000.00. The Debtor's Schedule I/J reflects combined monthly income of $8,809.80, monthly expenses of $9,754.92, and current monthly net income of negative $945.12. Accordingly, the Plan is structured primarily as a partial asset sale plan, not as a cash-flow-only plan.

The Debtor shall initially market and sell up to approximately 100 acres of the 560-acre Hico Ranch property. The Hico property is scheduled at a value of $10,000,000.00. The purpose of the initial Hico sale is to generate sufficient proceeds to: (i) pay the line-of-credit component of the Zions/CGB secured debt; (ii) cure any required arrearage or default necessary to reinstate

and maintain the remaining Zions/CGB mortgage/term-loan component; (iii) pay unavoidable closing costs, title costs, survey/replat costs, broker commissions, and ad valorem taxes required to deliver marketable title; (iv) reserve funds as required for disputed tax obligations or professional expenses; and (v) preserve the Debtor's remaining Hico acreage and operating assets for continued ranch, vineyard, grape cultivation, irrigation, cattle, and wine-production operations.

For avoidance of doubt, the Debtor does not propose to pay off the entire Zions/CGB mortgage/term-loan component through the initial Hico sale unless required by agreement or further order of the Court. The Plan instead contemplates that the line-of-credit component will be paid down or paid in full from the initial Hico sale proceeds, and that the remaining mortgage/term-loan obligation will be cured, reinstated, and maintained according to its applicable contract terms, as modified by this Plan or by agreement of the parties. The Debtor understands that Zions/CGB previously indicated a willingness to permit the Debtor to sell a portion of the Hico acreage and apply sale proceeds to the line-of-credit obligation. The Plan is intended to implement that structure.

The Debtor shall not be required to market more than the initial 100-acre carveout at the outset. Additional Hico acreage may be marketed only as a fallback remedy if: (i) the initial sale proceeds are insufficient to satisfy the required sale obligations; (ii) Zions/CGB or any other affected lienholder refuses to provide an agreed partial release on commercially reasonable terms; (iii) the Debtor fails to meet the sale milestones set forth in this Plan; or (iv) the Court determines, after notice and hearing, that additional nonessential acreage must be sold to fund the Plan. Any such additional sale shall be limited to the minimum nonessential acreage reasonably necessary to fund the Plan while preserving the Debtor's core ranch and vineyard operations.

The Zions/CGB secured obligations shall be treated without duplication. The claims register reflects separate filings for Zion First National Bank Claim No. 16 in the amount of $600,000.00, Zion First National Bank Claim No. 18 in the amount of $700,000.00, and CGB Agrifinancial Services, Inc. Claim No. 19 in the amount of $1,658,649.36. To the extent Claim No. 19 includes, restates, services, amends, supplements, or overlaps with Claim Nos. 16 and/or 18, the Confirmation Order shall provide that Zions/CGB is entitled to only one recovery on the same underlying debt. Nothing in this Plan shall permit duplicate distributions on the same collateral obligation.

### Hico Sale Waterfall – Initial 100-Acre Sale

For feasibility purposes, the Debtor projects an initial sale of up to 100 acres at an estimated baseline value of approximately $15,000.00 per acre, producing estimated gross proceeds of $1,500,000.00. Actual proceeds, closing costs, payoff figures, cure amounts, lien-release terms, and reserves remain subject to final settlement statements, allowed claims, creditor agreements, and Court approval where required.

| No. | Waterfall item | Estimated amount | Treatment / purpose |
|---|---|---|---|
| 1. | Estimated gross sale proceeds from initial Hico sale | $1,500,000.00 | Projected sale of up to 100 acres at approximately $15,000.00 per acre. |
| 2. | Broker commission / sale costs | ($90,000.00) | Estimated only. Paid only if incurred and approved or otherwise allowed at closing. |
| 3. | Title, survey, escrow, recording, replat, and closing costs | ($15,000.00) | Estimated ordinary and necessary transaction costs. |
| 4. | Hico/Hamilton/Erath ad valorem or tax liens required to deliver clean title | ($43,515.83) | Includes Propel Financial Services ($22,907.62), Erath County ($6,466.35), Hico ISD ($12,859.82), and Hico ESD ($1,282.04). |
| 5. | Zions/CGB LOC component | ($700,000.00) | To be paid or materially paid down from sale proceeds in exchange for an appropriate partial release of the acreage sold. |
| **6.** | **Estimated remaining proceeds after fixed items** | **$651,484.17** | **Available for cure/reinstatement reserves, disputed claim reserves, professional fees, trustee fees, operating preservation reserve, or further Plan** |

| | | | |
|---|---|---|---|
| | | | funding. |
| 7(a). | Cure / reinstatement reserve for Zions/CGB mortgage or term-loan component | TBD | Paid only to the extent necessary to cure and reinstate the retained mortgage/loan component; not a payoff of the full mortgage/term loan. |
| 7(b). | IRS disputed secured / priority reserve | TBD | Reserved or paid only as required by allowed claim, agreement, or order. |
| 7(c). | Allowed professional fees and Subchapter V trustee fees | TBD | Paid subject to allowance, agreement, or further Court order. |
| 7(d). | Operating preservation reserve | Up to $100,000.00 | Reserve for wine-production needs, barrels, grapes, and operational continuity. |

## 6.02 Parker County Replat and Sale Authority

The Debtor is authorized to complete the pending replat, partition, or other legally available separation of the Parker/Bear Creek vacant lot or acreage, including the portion referenced in First Bank Texas settlement documents. After replat/partition or Court authorization, the Debtor may sell the separated lot/acreage free and clear of liens, claims, and encumbrances, with liens attaching to proceeds in the same validity, priority, and extent as existed against the property, subject to claims objections and Court orders.

| Waterfall Item | Description | Amount/Reserve |
|---|---|---|
| Gross proceeds target | Sale of carved-out Parker County/Bear Creek lot after replat/partition | $500,000-$700,000 |
| Broker/closing/tax/title reserve | Estimated 8% closing/frictional cost reserve | ($40,000-$56,000) |
| First Bank Texas | Claim No. 17, allowed filed/amended amount subject to objection/reservation | ($260,000.00) |
| Parker CAD / clean-title tax liens | Secured Claim No. 4 and any current ad valorem tax necessary to close | ($14,985.64+) |
| Guild arrearage/current mortgage protection | Cure/escrow prepetition arrearage and postpetition amounts required to maintain residence collateral | TBD |
| Surplus | After sale costs and required secured/tax/cure payments, surplus funds Class 8 and reserves | TBD |

**6.03 Sale Process and Professional Employment**

1. Within 30 days after the Effective Date, the Debtor shall file any necessary employment applications for real estate brokers, auctioneers, surveyors, title professionals, tax professionals, accountants, or other sale professionals whose employment requires Court approval.

2. The Debtor may seek sale approval by separate motion, confirmation order, or post-confirmation motion, as appropriate. Any sale outside the ordinary course shall be subject to notice and opportunity for hearing unless otherwise authorized by the confirmation order.

3. Unless a lienholder consents or a final order provides otherwise, liens shall attach to sale proceeds with the same validity, extent, and priority as existed against the sold property.

4. The Debtor shall file status reports every 60 days after the Effective Date until all sale milestones are completed or the Court orders otherwise.

**6.04 Operating Reserve**

The $100,000 operational stabilization reserve is not a first-dollar carveout. It may be funded only from proceeds remaining after required sale expenses, lien payoffs necessary to close, statutory tax liens, required reserves, and administrative reserves. The reserve is earmarked for seasonal operational needs of Amore Wines of Texas, LLC and Bull Lion Ranch, including barrels, grapes, vineyard/ranch inputs, insurance, and ordinary operating expenses required to preserve the going-concern value of the retained business.

**ARTICLE VII - CLAIM OBJECTIONS, DISPUTED CLAIMS, AND RESERVES**

The Debtor shall have standing after confirmation to object to, reconcile, settle, estimate, or otherwise resolve claims. Unless extended by Court order, claim objections shall be filed by the Claim Objection Deadline. No payment on a Disputed Claim shall be required until the claim becomes an Allowed Claim, except that the Debtor shall reserve funds where necessary to satisfy confirmation requirements, sale closing requirements, or Court order.

**7.01 IRS Claim**

The IRS claim is disputed and shall be treated by reserve pending amended returns, documentation, claim objection, settlement, or further Court order. The IRS proof of claim identifies secured, priority, and general unsecured components and expressly states that certain liabilities are estimated because returns have not been filed or data is incomplete. The Plan therefore avoids fixing the IRS claim by estimate at confirmation unless the Court enters a specific valuation/allowance order after appropriate notice and evidence.

**7.02 First Bank Texas Claim**

The First Bank Texas amended proof of claim asserts a filed amount of $260,000 but includes settlement materials referencing $260,000 if paid within four months, $300,000 if not timely paid, 7% post-judgment interest, and legal expenses. This Plan treats Claim No. 17 at the filed/amended amount of $260,000 unless and until the Court allows a different amount after claim objection, settlement enforcement, or other contested matter. The Debtor reserves all rights concerning the amount, enforceability, attorneys' fees, interest, default remedies, lien validity, and scope of collateral.

**7.03 Deemed Filed and Scheduled Claims**

Nothing in this Plan disallows claims merely because a proof of claim was not filed if the claim is deemed filed under 11 U.S.C. § 1111(a) and Bankruptcy Rule 3003. Claims scheduled as disputed, contingent, or unliquidated are not deemed allowed solely by being scheduled. Notice-only entries and $0 scheduled claims shall receive no distribution unless the holder obtains allowance by proof of claim or order.

## ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Unless the Debtor files a separate assumption notice or the confirmation order provides otherwise, all executory contracts and unexpired leases not previously assumed or rejected shall be deemed rejected as of the Effective Date. The Debtor may file a schedule of contracts to be assumed, assumed and assigned, or rejected before confirmation. Any cure amount associated with assumption shall be paid as required by the Bankruptcy Code and any final order resolving the cure amount. Nothing herein rejects ordinary business licenses, permits, or nonexecutory arrangements necessary to continue wine, vineyard, or ranch operations unless expressly identified.

## ARTICLE IX - FEASIBILITY, DEFAULT REMEDIES, AND MILESTONES

### 9.01 Feasibility

The Plan's feasibility is based on the funding structure, sale sequence, Zions/CGB treatment, Hico sale waterfall, and operating-reserve limitations set forth in **Section 6.01**. Section 6.01 is incorporated into this Article IX by reference.

For avoidance of doubt, the Plan does not rely on the Debtor's current monthly net income to amortize the existing secured debt stack. Instead, feasibility depends on: (i) the controlled sale of up to approximately 100 acres of nonessential Hico acreage in the initial sale process; (ii) payment or material paydown of the Zions/CGB LOC component from Hico Net Sale Proceeds; (iii) cure, reinstatement, and maintenance of the retained Zions/CGB mortgage/term-loan component; (iv) payment or reserve of tax liens, administrative expenses, and disputed claims as required by this Plan and applicable law; and (v) preservation of the

Debtor's remaining ranch, vineyard, grape cultivation, irrigation, livestock, and wine-production operations.

If the initial Hico sale does not generate sufficient proceeds, or if commercially reasonable partial-release terms cannot be obtained, the Debtor may seek the fallback remedies described in Section 6.01 and Section 9.03, including Court approval to market additional nonessential Hico acreage in the minimum amount reasonably necessary to fund the Plan.

### 9.02 Milestones

| Deadline | Milestone |
|---|---|
| Effective Date + 30 days | File broker/professional employment applications and sale-status report. |
| Effective Date + 60 days | File report identifying listing broker, asking price, acreage configuration, title/survey status, and expected closing schedule for Hico sale. |
| Effective Date + 180 days | Obtain executed purchase contract(s) or file status report explaining delay and revised marketing/pricing plan. |
| Effective Date + 240 days | Close sufficient Hico sale(s) or seek Court approval of revised sale process, expanded acreage, auction, or other remedy. |
| Effective Date + 120 days | File Parker replat/partition status report. |
| Effective Date + 330 days | Close Parker sale or seek Court approval of revised process/remedy. |

### 9.03 Default Remedies

If the Debtor fails to meet a material sale or payment milestone, any affected creditor, the Subchapter V Trustee, or the U.S. Trustee may file a notice of default. The Debtor shall have 21 days to cure, obtain a consensual extension, or file a motion seeking modification of the milestone. If the default is not cured or modified by Court order, the Court may grant appropriate relief, including expanded sale authority, appointment of a broker or responsible person, relief from stay, conversion, dismissal, or such other remedy as is appropriate under § 1191(c)(3)(B) and applicable law.

**ARTICLE X - CONFIRMATION REQUIREMENTS**

The Debtor seeks confirmation under § 1191(a) if all impaired classes accept or under § 1191(b) if any impaired class rejects. The Plan is intended to comply with § 1190 by including a brief history of business operations, a liquidation analysis, and projections/feasibility information showing the ability to make payments through sale proceeds rather than monthly net income. The Plan also submits future earnings and sale proceeds necessary for execution of the Plan to the control and supervision required by § 1190(3).

If confirmation proceeds under § 1191(b), the Plan does not discriminate unfairly and is fair and equitable because it pays, cures, reinstates, reserves for, or otherwise treats allowed secured, priority, and unsecured claims in a manner at least equal to the required statutory amount. Because projected disposable income is negative based on Schedule I/J, the Plan's property distributions exceed the projected disposable income requirement. The Plan includes sale milestones and default remedies designed to satisfy § 1191(c)(3).

**ARTICLE XI - EFFECT OF CONFIRMATION, VESTING, AND DISCHARGE**

Except as otherwise provided in the Plan or confirmation order, property of the estate shall revest in the Debtor on the Effective Date subject to liens preserved by this Plan, sale obligations, claim reserves, and Court-retained jurisdiction. The Debtor shall remain responsible for implementing the Plan and consummating sales. Confirmation shall bind the Debtor and all creditors to the extent provided by the Bankruptcy Code.

If the Plan is confirmed under § 1191(b), discharge shall be governed by § 1192 and shall be entered after completion of all payments due within the time period fixed by the Plan or confirmation order, subject to statutory exceptions to discharge, including any exception

applicable to student loans, certain taxes, domestic support obligations, and other nondischargeable debts.

## ARTICLE XII - RETENTION OF JURISDICTION AND CAUSES OF ACTION

The Court shall retain jurisdiction to interpret and enforce the Plan and confirmation order; approve sales, professionals, and distributions; determine claim objections; resolve lien disputes; determine tax claims; enforce default remedies; approve settlements; and enter all orders necessary to consummate the Plan. The Debtor retains all estate causes of action, objections, defenses, setoff rights, recoupment rights, avoidance actions, tax refund rights, claims against third parties, and counterclaims unless expressly released by final order or separate written settlement approved by the Court.

## ARTICLE XIII - PLAN FUNDING SUMMARY

| Funding Source/Metric | Amount | Comment |
|---|---|---|
| Hico sale gross target | $1,500,000.00 | Assumes sufficient acreage at approximately $15,000/acre; additional nonessential Hico acreage may be marketed only as a fallback remedy if required sale obligations cannot be satisfied from the initial sale proceeds, if partial-release terms cannot be obtained, if sale milestones are not met, or if otherwise authorized by further Court order. |
| Parker sale gross target | $500,000-$700,000 | Dependent on replat/partition and market. |
| Total gross sale target | $2,000,000-$2,200,000 | Before costs/reserves. |
| Claims register total | $4,030,121.19 | Includes ongoing mortgage principal not necessarily paid in full immediately; some claims cured/reinstated/reserved. |
| Core feasibility point | N/A | Plan is feasible if it pays required sale payoffs/cures/reserves and preserves continuing mortgage payment ability. |

## ARTICLE XIV - DISTRIBUTION PROTOCOL

1. At each closing, the title company or escrow agent shall pay ordinary closing costs, broker commissions approved by the Court or authorized by agreement, title/survey/recording costs, prorated taxes, and liens required to close.

2. Remaining proceeds shall be distributed in the order required by lien priority, the confirmation order, sale order, and this Plan.

3. Disputed amounts shall be held in a Disputed Claim Reserve until allowed, disallowed, estimated, settled, or otherwise resolved by final order.

4. No payment to the Debtor on account of the operational stabilization reserve shall be made until the closing statement demonstrates that required senior payoffs, tax liens, administrative reserves, and disputed claim reserves are funded.

5. General unsecured distributions shall be made after secured/tax/cure/admin reserves are funded, unless the Court authorizes an interim distribution that does not impair senior treatment or feasibility.

6. The Debtor shall file a post-closing report within 14 days after each material sale closing summarizing gross proceeds, costs, lien payments, reserves, and remaining proceeds.

## ARTICLE XV - RESERVATIONS FOR CONFIRMATION ORDER

1. Confirmation shall not constitute allowance of any disputed claim except as expressly stated.

2. Confirmation shall not determine lien validity, extent, priority, or release obligations except as expressly stated or necessary to effectuate a specific sale order.

3. The Debtor reserves the right to object to the IRS claim and to reconcile or amend tax liabilities after filing amended or delinquent returns.

4. The Debtor reserves the right to object to any asserted First Bank Texas amount exceeding the filed/amended claim amount or to any postpetition fees, interest, or default charges not allowed by final order.

5. Governmental claims timely filed or amended by the governmental bar date shall be treated according to their final allowed status.

6. Claims deemed filed under §1111(a) and Rule 3003 are not disallowed solely because no proof of claim appears on the claims register.

Dated: July 8, 2026
Respectfully submitted,


NORRED LAW, PLLC

By: /s/ Clayton L. Everett
Clayton L. Everett
Attorneys for the Debtor