John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX

*ATTORNEYS FOR CGB AGRIFINANCIAL SERVICES, INC.*

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 25-44309-elm11 |
| ANTHONY CHARLES TORDIGLIONE, | § | |
| | § | CHAPTER 11 (SUBCHAPTER V) |
| Debtor. | § | |

**MOTION OF CGB AGRIFINANCIAL SERVICES, INC.**
**FOR RELIEF FROM THE AUTOMATIC STAY**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE ELDON B. MAHON U.S. COURTHOUSE, 501 W. 10TH ST., FORT WORTH, TEXAS 76102 BEFORE CLOSE OF BUSINESS TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

CGB Agrifinancial Services, Inc. ("CGB"), a secured creditor and party in interest, files this Motion for Relief from the Automatic Stay (the "Motion") under 11 U.S.C. § 362(d)(1) and (d)(2) and Federal Rules of Bankruptcy Procedure 4001 and 9014, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. CGB holds deed of trust liens on the Debtor's Hico Property securing a claim of not less than $1,781,700.96 as of August 1, 2026. CGB has received no payment since the Petition Date. The confirmed Plan does not fund itself from operations; it depends entirely on a sale of CGB's collateral and retention of the sales proceeds. The Debtor has not met the proposed Plan's sale milestones, has not paid CGB, and has provided CGB no adequate protection while its claim continues to accrue interest and fees.

2. Cause exists under § 362(d)(1). In the alternative, and to the extent the Court finds that the Debtor has no equity in the Hico Property, relief is warranted under § 362(d)(2) because the property is not necessary to an effective reorganization that is in prospect. CGB requests that the stay be terminated to permit it to exercise its rights and remedies under the Notes, the Deeds of Trust, and applicable Texas law.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the order of reference of the United States District Court for the Northern District of Texas. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

4. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. This Motion is filed in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

5. The statutory predicates for the relief requested are 11 U.S.C. §§ 361 and 362(d), (e), and (g), and Federal Rules of Bankruptcy Procedure 4001(a) and 9014.

## BACKGROUND AND PROCEDURAL HISTORY

### A. The Case

6. On November 3, 2025 (the "Petition Date"), Anthony Charles Tordiglione (the "Debtor") filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code").

7. On February 5, 2026, the Standing Chapter 13 Trustee moved to dismiss the case under 11 U.S.C. § 1307(c)(1) on the ground that the Debtor had caused unreasonable delay prejudicial to creditors, noting that the confirmation hearing had been continued one or more times and that the Debtor's failure to obtain timely confirmation was prejudicial to creditors. Dkt. 42 at 1.

8. On April 8, 2026, the Court granted the Debtor's motion to convert the case to chapter 11 and to proceed under subchapter V, found that the Debtor is a "small business debtor" under 11 U.S.C. § 101(51D), and extended the § 1189(b) plan deadline to ninety days after entry of the order. Order Granting Debtor's Motion to Convert, Dkt. 64, at 1–2 (entered April 9, 2026).

9. The Debtor filed amended schedules on June 12, 2026. Dkt. 88. The amended schedules differ materially from the Debtor's original schedules: the original Schedule E/F listed total nonpriority unsecured claims of $361,267.26 and no priority tax claims, Dkt. 40 at 13, while the amended schedules list priority tax claims of $138,937.76 and nonpriority unsecured claims of $88,646.51, Dkt. 88 at 41–42.

### B. CGB's Loans, Liens, and Claim

10. CGB Agrifinancial Services, Inc. ("CGB") holds and enforces two promissory notes executed by the Debtor and Cynthia Ann Tordiglione, each dated August 8, 2017, and originally payable to ZB, N.A. dba Zions First National Bank ("Zions"): (a) a $600,000.00 revolving line of credit, Loan No. 21701605, maturing January 1, 2048 ("Note-1"); and (b) an $800,000.00 term

loan, Loan No. 21701606, maturing September 1, 2032 ("Note-2," and together with Note-1, the "Notes"). Note-2 calls for 179 monthly payments of principal and interest of $4,593.21 beginning October 1, 2017, and a final payment on September 1, 2032. Note-1 calls for semi-annual interest payments on January 1 and July 1 of each year during the draw period.

11. Each Note is endorsed to U.S. Bank National Association, as Custodian/Trustee for Federal Agricultural Mortgage Corporation programs. The deeds of trust securing the Notes were assigned to the same assignee by Assignments of Mortgage/Deed of Trust recorded in Erath County, Texas on August 21, 2017. CGB services the loans and enforces the Notes under a power of attorney.

12. Each Note is secured by a Deed of Trust granting a lien on real property in Erath County, Texas, together with improvements, fixtures, rents, and personal property, including proceeds of any sale of the property. (together, the "Deeds of Trust"). The Exhibit A legal descriptions attached to both assignments are identical and describe Tract One (395.40 acres, J.W. Crawford Survey A-147, less and except 80.970 acres), Tract Two (238.319 acres, Henry Wood Survey, Abstract No. 828), and Tract Three (8.08 acres, J.W. Crawford Survey A-147). The Debtor schedules this property at 8216 County Road 539, Hico, Texas, consisting of a house, 560 acres, and mineral interests (the "Hico Property"). Dkt. 88 at 1–2.

13. The Notes are cross-defaulted: a default under either Note or its deed of trust is a default under the other. Upon default, each Note bears interest at a Post Maturity Rate equal to the lesser of the maximum lawful rate or the contract rate plus 5.000 percentage points, and each Note obligates the borrowers to pay the lender's reasonable attorneys' fees and collection costs. The Deeds of Trust require the Debtor to pay all taxes before delinquency, to maintain the property and insure the improvements with a mortgagee clause in favor of the lender, and not to commit or

permit waste, and they provide that amounts the lender advances to protect the collateral become part of the secured indebtedness.

14. On February 12, 2026, CGB filed its Claim in the amount of $1,658,649.36, secured in full by real estate under the Deeds of Trust, with an annual interest rate of 9.82% as of the Petition Date. The Claim lists the value of the collateral at $4,013,820.00. As of August 1, 2026, the outstanding balance owed on Note-1 was $903,298.72 and on Note-2 was $878,402.24, for a combined total of $1,781,700.96, inclusive of principal, accrued interest, and fees.

15. The Debtor's Schedule D values the Hico Property at $10,000,000.00 and lists the following liens against it: County of Erath ($6,466.35), Hico ISD ($12,859.82), Hico ESD ($1,282.04), Propel Tax ($22,907.62), and two Zions entries ($600,000.00 and $700,000.00). Dkt. 88 at 22, 24, 26–27. The Zions entries correspond to Claim Nos. 16 and 18, which the Plan itself describes as "potentially duplicative or overlapping" with CGB's Claim. Plan § 4.02, at 5.

**C. The Plan, CGB's Objection, and Confirmation**

16. On July 8, 2026, the Debtor filed the Plan. Dkt. 92. The Plan is an "asset-sale and cure plan." Plan § 1.01, at 1. It states that it "does not rely on current operations to amortize the existing secured debt stack," and that the Debtor's Schedules I and J reflect monthly income of $8,809.80 against monthly expenses of $9,754.92, "resulting in negative monthly net income of $945.12." Plan § 1.03, at 2; see also Plan § 6.01, at 8.

17. The Plan places CGB's Claim in Class 7 and provides that "[t]he LOC component shall be paid or materially paid down from Hico Net Sale Proceeds in exchange for appropriate partial releases of sold acreage," and that "[t]he remaining mortgage/term-loan component shall be cured, reinstated, and maintained according to the applicable loan documents, except as modified by

agreement, confirmation order, sale order, or further order of the Court." Plan Art. V, Class 7, at 7.

18. The Plan proposes to market and sell up to approximately 100 acres of the Hico Property at an estimated $15,000.00 per acre, for estimated gross proceeds of $1,500,000.00. Plan § 6.01, at 8–10. The Plan's waterfall allocates $700,000.00 to the line-of-credit component and leaves $651,484.17 for a cure reserve for the term-loan component ("TBD"), an IRS reserve ("TBD"), professional and trustee fees ("TBD"), and an operating preservation reserve of up to $100,000.00 for the Debtor's wine and ranch operations. Plan § 6.01, at 10–11. The $700,000.00 allocation is less than the $903,298.72 balance owed on Note-1 as of August 1, 2026, and no amount is allocated to pay down Note-2.

19. The Plan establishes sale milestones measured from the Effective Date: broker and professional employment applications within 30 days; a listing report within 60 days; an executed purchase contract or status report within 180 days; and a closing or a motion for approval of a revised process within 240 days. Plan § 9.02, at 15. It requires the Debtor to file status reports every 60 days after the Effective Date. Plan § 6.03(4), at 12. The "Effective Date" is the first business day that is 14 days after the Confirmation Date. Plan Art. II, at 3.

20. The Plan provides that, if the Debtor fails to meet a material sale or payment milestone, any affected creditor may file a notice of default, the Debtor has 21 days to cure, obtain a consensual extension, or move to modify the milestone, and, absent cure or modification, "the Court may grant appropriate relief, including . . . relief from stay, conversion, dismissal, or such other remedy as is appropriate under § 1191(c)(3)(B) and applicable law." Plan § 9.03, at 15. Property of the estate revests in the Debtor on the Effective Date. Plan Art. XI, at 16.

21. On July 27, 2026, CGB objected to confirmation on the grounds, among others, that the Plan provides no adequate protection during the marketing and sale period, fails to provide for interest, fees, and charges under 11 U.S.C. § 506(b), releases the term-loan lien on sold acreage without compensation, and is not feasible. Objection ¶¶ 13–32, at 5–11.

**D. The Debtor's Post-Confirmation Non-Performance**

22. CGB has received no payment of any kind from the Debtor or from any other source on account of the Notes since the Petition Date. The Debtor has made none of the semi-annual interest payments due under Note-1 and none of the monthly installments of $4,593.21 due under Note-2 since the Petition Date. Nearly twelve months have elapsed since the Petition Date.

23. As of the date of this Motion, the docket reflects no application to employ a real estate broker, no listing report, no executed purchase contract, and no sale motion. No portion of the Hico Property has been sold, and no proceeds have been paid to CGB.

24. Since the Petition Date, CGB's Claim has grown from $1,658,649.36 to at least $1,781,700.96 as of August 1, 2026, an increase of $123,051.60, and it continues to accrue interest, fees, and charges under the Notes. Claim at 2; Objection ¶ 5, at 3.

**ARGUMENT**

**A. The Standard for Relief**

25. Section 362(d) provides that, on request of a party in interest and after notice and a hearing, "the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay" (1) "for cause, including the lack of adequate protection of an interest in property of such party in interest," or (2) with respect to a stay of an act against property, if "the debtor does not have an equity in such property" and "such property is not necessary to an effective

reorganization." 11 U.S.C. § 362(d)(1), (2). The use of "shall" makes relief mandatory once either ground is established.

26. Section 362(g) allocates the burden of proof: "the party requesting such relief has the burden of proof on the issue of the debtor's equity in property," and "the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g)(1), (2). The movant must make an initial showing of cause—here, a valid, perfected lien, a debt in default, and the absence of payment or other protection. Once that showing is made, the Debtor bears the burden of proving that CGB's interest is adequately protected and, for purposes of § 362(d)(2), that the Hico Property is necessary to an effective reorganization. *Id.*; see *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76 (1988) (once the movant shows lack of equity, the debtor must show that the property is essential to an effective reorganization that is in prospect).

27. "Cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986); see also *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998). The lack of adequate protection is expressly identified as cause, 11 U.S.C. § 362(d)(1), and the forms of adequate protection are set out in 11 U.S.C. § 361. Adequate protection protects a secured creditor against decline in the value of its interest in the collateral during the stay. *Timbers*, 484 U.S. at 370–73.

**B. Cause Exists under § 362(d)(1)**

**1. CGB is a secured creditor holding a valid, perfected lien**

28. CGB's Claim asserts a fully secured claim of $1,658,649.36 as of the Petition Date, perfected by the Deeds of Trust. The Notes, the Deeds of Trust, the endorsements, and the recorded assignments establish the obligation, the lien, and the chain of title.

29. The Hico Property, the 560-acre tract that the Debtor scheduled at a value of $10,000,000.00 and identified as the "primary source of plan funding." Dkt. 88 at 1–2; Plan § 4.03, at 6. The only other lien scheduled against the Hico Property are ad valorem tax liens totaling $43,515.83. Dkt. 88 at 22, 24, 26–27; Plan § 4.02, at 5; Plan § 6.01, at 10–11. The Deeds of Trust extend to improvements, fixtures, rents, and the proceeds of any sale or other disposition of the property.

**2. The Debtor has made no payment to CGB since the Petition Date**

30. The Debtor has made no payment to CGB in nearly twelve months. Note-2 requires monthly installments of $4,593.21, and Note-1 requires semi-annual interest payments. A debtor's sustained failure to make post-petition payments to a secured creditor while retaining and using the collateral is a recognized basis for cause under § 362(d)(1), because the creditor is bearing the cost of the case without compensation. See *Timbers*, 484 U.S. at 370–73 (adequate protection guards against decline in the value of the creditor's interest during the stay); 11 U.S.C. § 361(1) (periodic cash payments as a form of adequate protection). The Debtor has offered no periodic payment, no replacement lien, and no other form of protection under § 361.

**3. The Plan is not feasible: it depends on an unrealized sale of CGB's collateral without full remittance of proceeds to CGB**

31. The Plan concedes that the Debtor's operations produce negative monthly net income of $945.12 and that the Plan does not rely on operations to service the secured debt. Plan § 1.03, at 2; Plan § 6.01, at 8. The Plan's only funding source is the proposed sale of up to approximately 100 acres of CGB's collateral at a projected $15,000.00 per acre. Plan § 6.01, at 8–10. No appraisal, broker opinion, or purchase contract supports that projection, amounting to pure speculation.

32. Even on the Debtor's projection, the Plan does not remit the sale proceeds to CGB. It allocates $700,000.00 to the line-of-credit component—less than the $903,298.72 owed on Note-1—allocates nothing to reduce Note-2, and diverts the remaining $651,484.17 to "TBD" reserves, professional fees, and an operating reserve of up to $100,000.00 for the Debtor's wine and ranch operations, while requiring partial releases of the sold acreage. Plan § 6.01, at 10–11. The Fifth Circuit requires that a plan offer "a reasonable assurance of commercial viability." *In re Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1165–66 (5th Cir. 1993); see also *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997). A plan that has produced no sale, no contract, and no payment months after the Effective Date, and that depends on the disposition of the secured creditor's collateral without payment of the proceeds to that creditor, offers no such assurance and provides no basis for continuing the stay.

**4. The passage of time without adequate protection**

33. Nearly twelve months have passed since the Petition Date. During that time, CGB's Claim has grown by at least $123,051.60, from $1,658,649.36 to $1,781,700.96 as of August 1, 2026, without any payment. At the 9.82% rate, interest alone accrues at approximately $13,573.28 per month on the petition-date balance, before application of the Post Maturity Rate. Each month of delay erodes the value cushion protecting CGB's interest, and ad valorem taxes, which are secured by liens that take priority over CGB's lien under Texas Tax Code § 32.05(b), continue to accrue. Dkt. 88 at 22, 24, 26. The Debtor's negative monthly cash flow means that he cannot fund taxes, insurance, and maintenance from operations. Plan § 1.03, at 2.

34. The question of value is itself unsettled: the Debtor scheduled the Hico Property at $10,000,000.00, Dkt. 88 at 2, while CGB's Claim lists a value of $4,013,820.00. The Debtor bears the burden of proving that CGB's interest is adequately protected, 11 U.S.C. § 362(g)(2), and an

unsupported scheduled value does not carry that burden. Under the Plan, the Debtor also proposes to obtain partial releases of the sold acreage while allocating none of the proceeds to Note-2. Plan § 6.01, at 10–11. A sale on those terms would reduce the collateral base securing Note-2 without compensation, which is a direct impairment of CGB's interest. Objection ¶¶ 14–18, at 6–7. The cumulative effect of these facts is cause for relief.

**C. In the Alternative, Relief Is Warranted under § 362(d)(2)**

35. Relief under § 362(d)(2) requires that the debtor have no equity in the property and that the property not be necessary to an effective reorganization. 11 U.S.C. § 362(d)(2)(A)–(B). "Equity" for this purpose is the difference between the value of the property and all encumbrances against it. See *Stewart v. Gurley*, 745 F.2d 1194, 1195–96 (9th Cir. 1984). CGB bears the burden on equity; the Debtor bears the burden on necessity. 11 U.S.C. § 362(g).

36. CGB acknowledges that, on the values presently in the record, the Hico Property appears to have equity over the liens identified in the schedules and the Claim: the Debtor scheduled the property at $10,000,000.00, and CGB's Claim lists a value of $4,013,820.00, against CGB's debt of $1,781,700.96 as of August 1, 2026, and scheduled tax liens of $43,515.83. Dkt. 88 at 2, 22, 24, 26. CGB therefore pleads § 362(d)(2) in the alternative and reserves the right to establish the absence of equity at the final hearing based on (a) an appraisal of the Hico Property, (b) all encumbrances, including the secured portion of the IRS claim to the extent it attaches to the Hico Property, and accrued ad valorem taxes, and (c) costs of sale.

37. If equity is lacking, the Debtor cannot carry his burden of showing that the Hico Property is necessary to an effective reorganization. That showing requires more than a statement that the property is needed; the debtor must show "that the property is essential for an effective reorganization that is in prospect," meaning "a reasonable possibility of a successful reorganization

within a reasonable time." *Timbers*, 484 U.S. at 375–76 (emphasis omitted). Here, the Plan rests on sales that have not occurred and on proceeds that the Plan does not remit to CGB; and the Debtor's operations produce negative cash flow. Plan § 1.03, at 2; Plan § 6.01, at 8–11. On this record, no effective reorganization is in prospect.

**RESERVATION OF RIGHTS**

38. CGB reserves all rights, claims, and remedies under the Notes, the Deeds of Trust, the Plan, the Bankruptcy Code, and applicable non-bankruptcy law, including the right to seek allowance of interest, fees, costs, and charges under 11 U.S.C. § 506(b), to supplement this Motion, and to seek dismissal or adequate protection by separate motion.

**CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE, CGB respectfully requests that the Court enter an order:

(a) terminating the automatic stay under 11 U.S.C. § 362(d)(1), or, in the alternative, § 362(d)(2), to permit CGB to exercise all rights and remedies under the Notes, the Deeds of Trust, and applicable Texas law, including posting and conducting a non-judicial foreclosure sale;

(b) waiving the fourteen-day stay of the order under Federal Rule of Bankruptcy Procedure 4001(a)(4);

(c) in the alternative, conditioning continuation of the stay on adequate protection in the form requested in CGB's separately filed Motion for Adequate Protection, with a provision that the stay terminates without further hearing upon the Debtor's failure to make any adequate protection payment within ten days after written notice of default; and

(d) granting CGB such other and further relief to which it may be justly entitled.

Respectfully submitted,

John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX

*/s/ John Massouh*
John Massouh

**ATTORNEYS FOR CGB AGRIFINANCIAL SERVICES, INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 6, 2026, I attempted to confer with Clayton Everett, Counsel for Debtor. I was unable to reach counsel and presume that he is opposed to this motion and relief requested.

*/s/ John Massouh*
John Massouh

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, a true and correct copy of the foregoing Objection of CGB Agrifinancial Services, Inc. to Confirmation of Debtor's Amended Subchapter V Plan of Reorganization was served via the Court's CM/ECF system on all parties registered to receive electronic notification in this case, and by first-class mail on any party not registered for electronic notification, including:

Clayton L. Everett
Norred Law, PLLC
515 E. Border Street
Arlington, Texas 76010
*Counsel for the Debtor*

Katharine Battaia Clark
Thompson Coburn LLP
2100 Ross Av., Suite 3200
Dallas, TX 75201
*Subchapter V Trustee*

*/s/ John Massouh*
John Massouh