John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX

*ATTORNEYS FOR CGB AGRIFINANCIAL SERVICES, INC.*

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 25-44309-elm11 |
| ANTHONY CHARLES TORDIGLIONE, | § | |
| | § | CHAPTER 11 (SUBCHAPTER V) |
| Debtor. | § | |

**MOTION OF CGB AGRIFINANCIAL SERVICES, INC. TO DISMISS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b)**

CGB Agrifinancial Services, Inc. ("CGB"), a secured creditor and party in interest, files this Motion to Dismiss Chapter 11 Case (the "Motion") under 11 U.S.C. § 1112(b) and Federal Rules of Bankruptcy Procedure 1017 and 9014, and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This case has been pending since November 3, 2025. It began in Chapter 13, where the Standing Chapter 13 Trustee moved to dismiss for unreasonable delay prejudicial to creditors. It was converted to subchapter V, and the Debtor proposed a Plan that depends entirely on selling CGB's collateral because the Debtor's operations lose money each month. There has been almost no activity in the case since the filing of the Plan and CGB has been paid nothing.

2. Cause exists under § 1112(b)(4), and on the independent ground of unreasonable delay prejudicial to creditors. No unusual circumstances establish that dismissal is not in the best interests of creditors and the estate. Dismissal is warranted.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the order of reference of the United States District Court for the Northern District of Texas. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

4. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. This Motion is filed in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

5. The statutory predicates for the relief requested are 11 U.S.C. §§ 105(a), 1112(b), and 1191, and Federal Rules of Bankruptcy Procedure 1017(f) and 9014.

**BACKGROUND AND PROCEDURAL HISTORY**

**A. The Case**

6. On November 3, 2025 (the "Petition Date"), Anthony Charles Tordiglione (the "Debtor") filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code").

7. The Debtor filed his Statement of Financial Affairs on February 2, 2026. Dkt. 39. The Statement of Financial Affairs discloses that the Debtor's debts are not primarily consumer debts, Dkt. 39 at 2, and that the Debtor operates Amore Wines of Texas, LLC, a winery located at 8216 CR 539, Hico, Texas, Dkt. 39 at 10–11. It reports gross business income of $60,000.00 and Social Security income of $23,771.00 for the portion of 2025 preceding the Petition Date. Dkt. 39 at 2.

8. On February 5, 2026, the Standing Chapter 13 Trustee moved to dismiss the case under 11 U.S.C. § 1307(c)(1) on the ground that the Debtor had caused unreasonable delay prejudicial

to creditors, noting that the confirmation hearing had been continued one or more times and that the Debtor's failure to obtain timely confirmation was prejudicial to creditors. Dkt. 42 at 1.

9. On April 8, 2026, the Court granted the Debtor's motion to convert the case to chapter 11 and to proceed under subchapter V, found that the Debtor is a "small business debtor" under 11 U.S.C. § 101(51D), and extended the § 1189(b) plan deadline to ninety days after entry of the order. Order Granting Debtor's Motion to Convert, Dkt. 64, at 1–2 (entered April 9, 2026).

10. The Debtor filed amended schedules on June 12, 2026. Dkt. 88. The amended schedules differ materially from the Debtor's original schedules: the original Schedule E/F listed total nonpriority unsecured claims of $361,267.26 and no priority tax claims, Dkt. 40 at 13, while the amended schedules list priority tax claims of $138,937.76 and nonpriority unsecured claims of $88,646.51, Dkt. 88 at 41–42.

**B. CGB's Loans, Liens, and Claim**

11. CGB Agrifinancial Services, Inc. ("CGB") holds and enforces two promissory notes executed by the Debtor and Cynthia Ann Tordiglione, each dated August 8, 2017, and originally payable to ZB, N.A. dba Zions First National Bank ("Zions"): (a) a $600,000.00 revolving line of credit, Loan No. 21701605, maturing January 1, 2048 ("Note-1"), Ex. A at 1; and (b) an $800,000.00 term loan, Loan No. 21701606, maturing September 1, 2032 ("Note-2," and together with Note-1, the "Notes"). Note-2 calls for 179 monthly payments of principal and interest of $4,593.21 beginning October 1, 2017, and a final payment on September 1, 2032. Note-1 calls for semi-annual interest payments on January 1 and July 1 of each year during the draw period.

12. Each Note is endorsed to U.S. Bank National Association, as Custodian/Trustee for Federal Agricultural Mortgage Corporation programs. The deeds of trust securing the Notes were assigned to the same assignee by Assignments of Mortgage/Deed of Trust recorded in Erath

County, Texas on August 21, 2017, as Document Nos. 2017-04459 and 2017-04462. CGB services the loans and enforces the Notes under a power of attorney.

13. Each Note is secured by a Deed of Trust granting a lien on real property in Erath County, Texas, together with improvements, fixtures, rents, and personal property, including proceeds of any sale of the property. (together, the "Deeds of Trust"). The Exhibit A legal descriptions attached to both assignments are identical and describe Tract One (395.40 acres, J.W. Crawford Survey A-147, less and except 80.970 acres), Tract Two (238.319 acres, Henry Wood Survey, Abstract No. 828), and Tract Three (8.08 acres, J.W. Crawford Survey A-147). The Debtor schedules this property at 8216 County Road 539, Hico, Texas, consisting of a house, 560 acres, and mineral interests (the "Hico Property"). Dkt. 88 at 1–2.

14. The Notes are cross-defaulted: a default under either Note or its deed of trust is a default under the other. Upon default, each Note bears interest at a Post Maturity Rate equal to the lesser of the maximum lawful rate or the contract rate plus 5.000 percentage points, and each Note obligates the borrowers to pay the lender's reasonable attorneys' fees and collection costs. The Deeds of Trust require the Debtor to pay all taxes before delinquency, to maintain the property and insure the improvements with a mortgagee clause in favor of the lender, and not to commit or permit waste, and they provide that amounts the lender advances to protect the collateral become part of the secured indebtedness.

15. On February 12, 2026, CGB filed its Claim in the amount of $1,658,649.36, secured in full by real estate under the Deeds of Trust, with an annual interest rate of 9.82% as of the Petition Date. The Claim lists the value of the collateral at $4,013,820.00. As of August 1, 2026, the outstanding balance owed on Note-1 was $903,298.72 and on Note-2 was $878,402.24, for a combined total of $1,781,700.96, inclusive of principal, accrued interest, and fees.

16. The Debtor's Schedule D values the Hico Property at $10,000,000.00 and lists the following liens against it: County of Erath ($6,466.35), Hico ISD ($12,859.82), Hico ESD ($1,282.04), Propel Tax ($22,907.62), and two Zions entries ($600,000.00 and $700,000.00). Dkt. 88 at 22, 24, 26–27. The Zions entries correspond to Claim Nos. 16 and 18, which the Plan itself describes as "potentially duplicative or overlapping" with CGB's Claim. Plan § 4.02, at 5.

**C. The Plan, CGB's Objection, and Confirmation**

17. On July 8, 2026, the Debtor filed the Plan. Dkt. 92. The Plan is an "asset-sale and cure plan." Plan § 1.01, at 1. It states that it "does not rely on current operations to amortize the existing secured debt stack," and that the Debtor's Schedules I and J reflect monthly income of $8,809.80 against monthly expenses of $9,754.92, "resulting in negative monthly net income of $945.12." Plan § 1.03, at 2; see also Plan § 6.01, at 8.

18. The Plan places CGB's Claim in Class 7 and provides that "[t]he LOC component shall be paid or materially paid down from Hico Net Sale Proceeds in exchange for appropriate partial releases of sold acreage," and that "[t]he remaining mortgage/term-loan component shall be cured, reinstated, and maintained according to the applicable loan documents, except as modified by agreement, confirmation order, sale order, or further order of the Court." Plan Art. V, Class 7, at 7.

19. The Plan proposes to market and sell up to approximately 100 acres of the Hico Property at an estimated $15,000.00 per acre, for estimated gross proceeds of $1,500,000.00. Plan § 6.01, at 8–10. The Plan's waterfall allocates $700,000.00 to the line-of-credit component and leaves $651,484.17 for a cure reserve for the term-loan component ("TBD"), an IRS reserve ("TBD"), professional and trustee fees ("TBD"), and an operating preservation reserve of up to $100,000.00 for the Debtor's wine and ranch operations. Plan § 6.01, at 10–11. The $700,000.00

allocation is less than the $903,298.72 balance owed on Note-1 as of August 1, 2026, and no amount is allocated to pay down Note-2.

20. The Plan establishes sale milestones measured from the Effective Date: broker and professional employment applications within 30 days; a listing report within 60 days; an executed purchase contract or status report within 180 days; and a closing or a motion for approval of a revised process within 240 days. Plan § 9.02, at 15. It requires the Debtor to file status reports every 60 days after the Effective Date. Plan § 6.03(4), at 12. The "Effective Date" is the first business day that is 14 days after the Confirmation Date. Plan Art. II, at 3.

21. On July 27, 2026, CGB objected to confirmation on the grounds, among others, that the Plan provides no adequate protection during the marketing and sale period, fails to provide for interest, fees, and charges under 11 U.S.C. § 506(b), releases the term-loan lien on sold acreage without compensation, and is not feasible.

**D. The Debtor's Non-Performance**

22. CGB has received no payment of any kind from the Debtor or from any other source on account of the Notes since the Petition Date. The Debtor has made none of the semi-annual interest payments due under Note-1 and none of the monthly installments of $4,593.21 due under Note-2 since the Petition Date. Nearly twelve months have elapsed since the Petition Date.

23. As of the date of this Motion, the docket reflects no application to employ a real estate broker, no listing report, no executed purchase contract, no sale motion, and no 60-day status report. No portion of the Hico Property has been sold, and no proceeds have been paid to CGB.

24. Since the Petition Date, CGB's Claim has grown from $1,658,649.36 to at least $1,781,700.96 as of August 1, 2026, an increase of $123,051.60, and it continues to accrue interest, fees, and charges under the Notes.

## ARGUMENT

### A. The Standard under § 1112(b)

25. Section 1112(b)(1) provides that, on request of a party in interest and after notice and a hearing, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause," unless the court determines that the appointment of a trustee or examiner under § 1104(a) is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). Since the 2005 amendments, the statute is mandatory: once cause is established, the court must convert or dismiss unless the debtor establishes the "unusual circumstances" exception in § 1112(b)(2). See *In re Gateway Access Sols., Inc.*, 374 B.R. 556, 560–61 (Bankr. M.D. Pa. 2007).

26. Section 1112(b)(4) lists sixteen non-exclusive examples of cause. 11 U.S.C. § 1112(b)(4)(A)–(P); see 11 U.S.C. § 102(3) ("includes" is not limiting). The movant bears the burden of establishing cause by a preponderance of the evidence; the court retains broad discretion in determining whether cause exists and in selecting the remedy. See *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242–43 (4th Cir. 1994); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (cause determined on the totality of the circumstances).

### B. Cause Exists

#### 1. Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation — § 1112(b)(4)(A)

27. Section 1112(b)(4)(A) has two elements: (i) a substantial or continuing loss to or diminution of the estate, and (ii) the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A). Negative cash flow after the petition date satisfies the first element, and "rehabilitation" refers to whether the debtor will be reestablished on a sound financial basis, not

merely whether a plan can be confirmed. See *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 515–16 (8th Cir. 2004). Here the Plan is objectively futile, necessitating dismissal. *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989) (holding that a Chapter 11 petition may be dismissed if it was filed in subjective bad faith and if the proposed reorganization is objectively futile).

28. Both elements are met. The Debtor's own Plan states that his Schedules I and J show monthly income of $8,809.80 against monthly expenses of $9,754.92, for negative monthly net income of $945.12. Plan § 1.03, at 2; Plan § 6.01, at 8. Each month, therefore, the Debtor's expenses exceed his income, while CGB's secured Claim grows: from $1,658,649.36 on the Petition Date to $1,781,700.96 as of August 1, 2026, an increase of $123,051.60. Interest at the 9.82% rate accrues at approximately $13,573.28 per month on the petition-date balance. Secured debt accruing against the estate's principal asset with no offsetting payments is a continuing diminution of the estate.

29. There is no reasonable likelihood of rehabilitation. The Plan concedes that it "does not rely on current operations to amortize the existing secured debt stack." Plan § 1.03, at 2. Its feasibility depends on the sale of up to approximately 100 acres of the Hico Property at a projected $15,000.00 per acre, a figure unsupported by any appraisal, broker opinion, or contract. Plan § 6.01, at 8–10; Plan § 9.01, at 14–15. That sale has not occurred, and the Debtor has not met the preliminary milestones necessary to bring it about. Even on the Debtor's projections, the Plan's waterfall pays only $700,000.00 toward Note-1, which had a balance of $903,298.72 as of August 1, 2026, and nothing toward Note-2. Plan § 6.01, at 10–11.

**2. Unreasonable delay by the Debtor that is prejudicial to creditors**

30. Unreasonable delay by the debtor that is prejudicial to creditors was an enumerated ground for cause under § 1112(b)(1) before the 2005 amendments, and it remains cause under the non-exclusive list in current § 1112(b)(4). See 11 U.S.C. § 102(3); *Little Creek*, 779 F.2d at 1072.

Delay here is a pattern, not an isolated event. In chapter 13, the confirmation hearing was continued one or more times, and the Standing Chapter 13 Trustee moved to dismiss for unreasonable delay prejudicial to creditors. Dkt. 42 at 1. After conversion, the Court extended the plan deadline under § 1189(b). Dkt. 64 at 1–2. The Plan, filed eight months after the Petition Date, sets sale milestones that run as long as 240 days from the Effective Date for the Hico sale and 330 days for the Parker sale. Plan § 9.02, at 15. The prejudice to CGB is concrete: it has gone without payment for nearly twelve months while its Claim has increased by at least $123,051.60. The Debtor should not be allowed any further delays.

**3. Additional considerations**

31. The Debtor's schedules have changed materially during the case. His original Schedule E/F reported $361,267.26 in nonpriority unsecured claims and no priority tax claims, Dkt. 40 at 13, while his amended schedules report $138,937.76 in priority tax claims and $88,646.51 in nonpriority unsecured claims, Dkt. 88 at 41–42. The IRS claim is disputed and, according to the Plan, includes liabilities estimated because returns have not been filed or data is incomplete. Plan § 7.01, at 13. These matters bear on the reliability of the Debtor's financial disclosures and the prospects for completion of the Plan.

**C. The "Unusual Circumstances" Exception in § 1112(b)(2) Does Not Apply**

32. Section 1112(b)(2) permits the court to deny relief only if it "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," and the debtor or another party in interest establishes that (A) there is a reasonable likelihood that a plan will be confirmed within the applicable statutory timeframes or, if not applicable, within a reasonable period of time, and (B) the grounds for converting or dismissing the case include an act or omission of the debtor, other than under § 1112(b)(4)(A), for which there exists a reasonable justification and that will be cured within a

reasonable period of time fixed by the court. 11 U.S.C. § 1112(b)(2). The burden is on the party opposing relief.

33. The exception does not apply for four reasons. First, it is unavailable as to cause under § 1112(b)(4)(A); by its terms, subparagraph (B) excludes acts or omissions under that paragraph. 11 U.S.C. § 1112(b)(2)(B). Second, the Debtor cannot identify anything unusual about this case: a single individual debtor with negative cash flow, a proposed plan dependent on a speculative sale of the secured creditor's collateral, and unperformed milestones present the ordinary circumstances in which § 1112(b) requires relief. Third, there is no reasonable likelihood that a different plan would be confirmed and performed within a reasonable time. Fourth, the Debtor's defaults—nonpayment and failure to market the property—have no reasonable justification on this record and cannot be cured within a reasonable time given the Debtor's negative operating income.

**D. Dismissal Is the Appropriate Remedy**

34. Once cause is established, the Court must choose between conversion and dismissal based on the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). The record indicates that the Debtor operates a vineyard, winery, and ranch, including grape cultivation and livestock. Dismissal returns the parties to their state-law rights and remedies, which is in the best interests of CGB and the other secured creditors whose claims are secured by real property and which the Debtor represents will be "paid, cured, reinstated, reserved, or otherwise treated as required by the Bankruptcy Code." Plan § 4.03, at 5. The appointment of a trustee under § 1104(a) or removal of the Debtor as debtor in possession under § 1185, would not remedy the absence of operating income.

35. CGB further requests that the order of dismissal provide that any relief from stay previously granted remains in effect and that the dismissal is without prejudice to CGB's rights and remedies under the Notes, the Deeds of Trust, and applicable law.

**CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE, CGB respectfully requests that the Court enter an order:

(a) finding that cause exists under 11 U.S.C. § 1112(b)(4), and on account of unreasonable delay prejudicial to creditors;

(b) finding that no unusual circumstances exist under 11 U.S.C. § 1112(b)(2);

(c) dismissing this chapter 11 case; and

(d) granting CGB such other and further relief to which it may be justly entitled.

Respectfully submitted,

John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX

*<u>/s/ John Massouh</u>*
John Massouh

**ATTORNEYS FOR CGB
AGRIFINANCIAL SERVICES, INC.**

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that on November 6, 2026, I attempted to confer with Clayton Everett, Counsel for Debtor. I was unable to reach counsel and presume that he is opposed to this motion and relief requested.

*<u>/s/ John Massouh</u>*
John Massouh

# CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, a true and correct copy of the foregoing Objection of CGB Agrifinancial Services, Inc. to Confirmation of Debtor's Amended Subchapter V Plan of Reorganization was served via the Court's CM/ECF system on all parties registered to receive electronic notification in this case, and by first-class mail on any party not registered for electronic notification, including:

Clayton L. Everett
Norred Law, PLLC
515 E. Border Street
Arlington, Texas 76010
*Counsel for the Debtor*

Katharine Battaia Clark
Thompson Coburn LLP
2100 Ross Av., Suite 3200
Dallas, TX 75201
*Subchapter V Trustee*

*/s/ John Massouh*
John Massouh