John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX

*ATTORNEYS FOR CGB AGRIFINANCIAL SERVICES, INC.*

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 25-44309-elm11 |
| ANTHONY CHARLES TORDIGLIONE, | § | |
| | § | CHAPTER 11 (SUBCHAPTER V) |
| Debtor. | § | |

**MOTION OF CGB AGRIFINANCIAL SERVICES, INC. FOR ADEQUATE PROTECTION (PLEADED IN THE ALTERNATIVE)**

CGB Agrifinancial Services, Inc. ("CGB"), a secured creditor and party in interest, files this Motion for Adequate Protection (the "Motion") under 11 U.S.C. §§ 361, 362(d)(1), and 363(e), and Federal Rules of Bankruptcy Procedure 4001 and 9014. This Motion is pleaded in the alternative to CGB's Motion for Relief from the Automatic Stay and CGB's Motion to Dismiss Chapter 11 Case, filed contemporaneously, and is to be considered only if, and to the extent that, the Court denies those motions. CGB respectfully states as follows:

**PRELIMINARY STATEMENT**

1. If the Court continues the automatic stay and permits this case to proceed, CGB requests that its interests be adequately protected. CGB has received no payment since the Petition Date, its Claim has grown by at least $123,051.60, the Debtor's operations run at a monthly deficit, and the proposed Plan contemplates a sale of CGB's collateral that would release CGB's term-loan

lien on the sold acreage without allocating proceeds to that loan. CGB requests monthly cash payments, replacement liens, the payment of proceeds of any sale of its collateral at closing, and related protective conditions.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the order of reference of the United States District Court for the Northern District of Texas. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), (M), and (O).

3. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. This Motion is filed in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

4. The statutory predicates for the relief requested are 11 U.S.C. §§ 361, 362(d)(1), 363(e), 363(p), and 507(b), and Federal Rules of Bankruptcy Procedure 4001 and 9014.

**BACKGROUND AND PROCEDURAL HISTORY**

**A. The Case**

5. On November 3, 2025 (the "Petition Date"), Anthony Charles Tordiglione (the "Debtor") filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code").

6. The Debtor filed his Statement of Financial Affairs on February 2, 2026. Dkt. 39. The Statement of Financial Affairs discloses that the Debtor's debts are not primarily consumer debts, Dkt. 39 at 2, and that the Debtor operates Amore Wines of Texas, LLC, a winery located at 8216 CR 539, Hico, Texas, Dkt. 39 at 10–11. It reports gross business income of $60,000.00 and Social Security income of $23,771.00 for the portion of 2025 preceding the Petition Date. Dkt. 39 at 2.

7. On February 5, 2026, the Standing Chapter 13 Trustee moved to dismiss the case under 11 U.S.C. § 1307(c)(1) on the ground that the Debtor had caused unreasonable delay prejudicial

to creditors, noting that the confirmation hearing had been continued one or more times and that the Debtor's failure to obtain timely confirmation was prejudicial to creditors. Dkt. 42 at 1.

8. On April 8, 2026, the Court granted the Debtor's motion to convert the case to chapter 11 and to proceed under subchapter V, found that the Debtor is a "small business debtor" under 11 U.S.C. § 101(51D), and extended the § 1189(b) plan deadline to ninety days after entry of the order.

9. The Debtor filed amended schedules on June 12, 2026. Dkt. 88. The amended schedules differ materially from the Debtor's original schedules: the original Schedule E/F listed total nonpriority unsecured claims of $361,267.26 and no priority tax claims, Dkt. 40 at 13, while the amended schedules list priority tax claims of $138,937.76 and nonpriority unsecured claims of $88,646.51, Dkt. 88 at 41–42.

**B. CGB's Loans, Liens, and Claim**

10. CGB Agrifinancial Services, Inc. ("CGB") holds and enforces two promissory notes executed by the Debtor and Cynthia Ann Tordiglione, each dated August 8, 2017, and originally payable to ZB, N.A. dba Zions First National Bank ("Zions"): (a) a $600,000.00 revolving line of credit, Loan No. 21701605, maturing January 1, 2048 ("Note-1"), Ex. A at 1; and (b) an $800,000.00 term loan, Loan No. 21701606, maturing September 1, 2032 ("Note-2," and together with Note-1, the "Notes"). Note-2 calls for 179 monthly payments of principal and interest of $4,593.21 beginning October 1, 2017, and a final payment on September 1, 2032. Note-1 calls for semi-annual interest payments on January 1 and July 1 of each year during the draw period.

11. Each Note is endorsed to U.S. Bank National Association, as Custodian/Trustee for Federal Agricultural Mortgage Corporation programs. The deeds of trust securing the Notes were assigned to the same assignee by Assignments of Mortgage/Deed of Trust recorded in Erath

County, Texas on August 21, 2017, as Document Nos. 2017-04459 and 2017-04462. CGB services the loans and enforces the Notes under a power of attorney.

12. Each Note is secured by a Deed of Trust granting a lien on real property in Erath County, Texas, together with improvements, fixtures, rents, and personal property, including proceeds of any sale of the property. (together, the “Deeds of Trust”). The Exhibit A legal descriptions attached to both assignments are identical and describe Tract One (395.40 acres, J.W. Crawford Survey A-147, less and except 80.970 acres), Tract Two (238.319 acres, Henry Wood Survey, Abstract No. 828), and Tract Three (8.08 acres, J.W. Crawford Survey A-147). The Debtor schedules this property at 8216 County Road 539, Hico, Texas, consisting of a house, 560 acres, and mineral interests (the “Hico Property”). Dkt. 88 at 1–2.

13. The Notes are cross-defaulted: a default under either Note or its deed of trust is a default under the other. Upon default, each Note bears interest at a Post Maturity Rate equal to the lesser of the maximum lawful rate or the contract rate plus 5.000 percentage points, and each Note obligates the borrowers to pay the lender’s reasonable attorneys’ fees and collection costs. The Deeds of Trust require the Debtor to pay all taxes before delinquency, to maintain the property and insure the improvements with a mortgagee clause in favor of the lender, and not to commit or permit waste, and they provide that amounts the lender advances to protect the collateral become part of the secured indebtedness.

14. On February 12, 2026, CGB filed its Claim in the amount of $1,658,649.36, secured in full by real estate under the Deeds of Trust, with an annual interest rate of 9.82% as of the Petition Date. The Claim lists the value of the collateral at $4,013,820.00. As of August 1, 2026, the outstanding balance owed on Note-1 was $903,298.72 and on Note-2 was $878,402.24, for a combined total of $1,781,700.96, inclusive of principal, accrued interest, and fees.

15. The Debtor's Schedule D values the Hico Property at $10,000,000.00 and lists the following liens against it: County of Erath ($6,466.35), Hico ISD ($12,859.82), Hico ESD ($1,282.04), Propel Tax ($22,907.62), and two Zions entries ($600,000.00 and $700,000.00). Dkt. 88 at 22, 24, 26–27. The Zions entries correspond to Claim Nos. 16 and 18, which the Plan itself describes as "potentially duplicative or overlapping" with CGB's Claim. Plan § 4.02, at 5.

**C. The Plan, CGB's Objection, and Confirmation**

16. On July 8, 2026, the Debtor filed the proposed Plan. Dkt. 92. The Plan is an "asset-sale and cure plan." Plan § 1.01, at 1. It states that it "does not rely on current operations to amortize the existing secured debt stack," and that the Debtor's Schedules I and J reflect monthly income of $8,809.80 against monthly expenses of $9,754.92, "resulting in negative monthly net income of $945.12." Plan § 1.03, at 2; see also Plan § 6.01, at 8.

17. The Plan places CGB's Claim in Class 7 and provides that "[t]he LOC component shall be paid or materially paid down from Hico Net Sale Proceeds in exchange for appropriate partial releases of sold acreage," and that "[t]he remaining mortgage/term-loan component shall be cured, reinstated, and maintained according to the applicable loan documents, except as modified by agreement, confirmation order, sale order, or further order of the Court." Plan Art. V, Class 7, at 7.

18. The Plan proposes to market and sell up to approximately 100 acres of the Hico Property at an estimated $15,000.00 per acre, for estimated gross proceeds of $1,500,000.00. Plan § 6.01, at 8–10. The Plan's waterfall allocates $700,000.00 to the line-of-credit component and leaves $651,484.17 for a cure reserve for the term-loan component ("TBD"), an IRS reserve ("TBD"), professional and trustee fees ("TBD"), and an operating preservation reserve of up to $100,000.00 for the Debtor's wine and ranch operations. Plan § 6.01, at 10–11. The $700,000.00

allocation is less than the $903,298.72 balance owed on Note-1 as of August 1, 2026 and no amount is allocated to pay down Note-2.

19. The Plan establishes sale milestones measured from the Effective Date: broker and professional employment applications within 30 days; a listing report within 60 days; an executed purchase contract or status report within 180 days; and a closing or a motion for approval of a revised process within 240 days. Plan § 9.02, at 15. It requires the Debtor to file status reports every 60 days after the Effective Date. Plan § 6.03(4), at 12. The "Effective Date" is the first business day that is 14 days after the Confirmation Date. Plan Art. II, at 3.

20. On July 27, 2026, CGB objected to confirmation on the grounds, among others, that the Plan provides no adequate protection during the marketing and sale period, fails to provide for interest, fees, and charges under 11 U.S.C. § 506(b), releases the term-loan lien on sold acreage without compensation, and is not feasible. Objection ¶¶ 13–32, at 5–11.

**D. The Lack of Adequate Protection**

21. CGB has received no payment of any kind from the Debtor or from any other source on account of the Notes since the Petition Date. The Debtor has made none of the semi-annual interest payments due under Note-1 and none of the monthly installments of $4,593.21 due under Note-2 since the Petition Date. Nearly twelve months have elapsed since the Petition Date.

22. As of the date of this Motion, the docket reflects no application to employ a real estate broker, no listing report, no executed purchase contract, and no sale motion. No portion of the Hico Property has been sold, and no proceeds have been paid to CGB.

23. Since the Petition Date, CGB's Claim has grown from $1,658,649.36 to at least $1,781,700.96 as of August 1, 2026, an increase of $123,051.60, and it continues to accrue interest, fees, and charges under the Notes.

## ARGUMENT

### A. The Standard for Adequate Protection and the Burden of Proof

24. Section 363(e) provides that, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The relief is mandatory upon request. A debtor in possession has the rights and duties of a trustee for this purpose. 11 U.S.C. §§ 1107(a), 1184. Section 362(d)(1) likewise authorizes the Court to condition the stay on adequate protection of a secured creditor's interest. 11 U.S.C. § 362(d)(1).

25. Section 361 identifies three non-exclusive means of providing adequate protection where the stay or the use, sale, or lease of property results in a decrease in the value of the creditor's interest: (1) "a cash payment or periodic cash payments"; (2) "an additional or replacement lien"; or (3) other relief that will result in the realization of the "indubitable equivalent" of the creditor's interest, other than an administrative-expense claim. 11 U.S.C. § 361(1)–(3).

26. The burden is allocated by statute. In any hearing under § 363, "the trustee has the burden of proof on the issue of adequate protection," and "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(1), (2). In the stay context, the party opposing relief bears the burden on all issues other than the debtor's equity. 11 U.S.C. § 362(g). The Debtor therefore bears the burden of proving that CGB's interest is adequately protected.

27. The interest protected is the value of the creditor's interest in the collateral, and adequate protection compensates for any decline in that value attributable to the stay and the debtor's use of the collateral. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370–73 (1988), *aff'g* 808 F.2d 363 (5th Cir. 1987) (en banc). An equity cushion

may, in some circumstances, constitute adequate protection, but its sufficiency depends on its size, the reliability of the valuation, and the rate at which it is being eroded. *See In re Mellor*, 734 F.2d 1396, 1400–01 (9th Cir. 1984). If adequate protection later proves inadequate, the creditor is entitled to a priority claim under 11 U.S.C. § 507(b).

**B. CGB's Secured Position**

28. CGB holds Claim No. 19 in the amount of $1,658,649.36 as of the Petition Date, secured by the Deeds of Trust on the Hico Property. The Claim is based on Note-1 ($600,000.00 original principal; Loan No. 21701605) and Note-2 ($800,000.00 original principal; Loan No. 21701606), each dated August 8, 2017. As of August 1, 2026, the balances were $903,298.72 on Note-1 and $878,402.24 on Note-2, for a total of $1,781,700.96.

29. The collateral consists of the real property described in Exhibit A to the Deeds of Trust and assignments—Tract One (395.40 acres, less and except 80.970 acres), Tract Two (238.319 acres), and Tract Three (8.08 acres)—which the Debtor schedules as the 560-acre Hico Property, together with improvements, fixtures, rents, personal property, and proceeds. CGB's lien is junior only to ad valorem tax liens, which the Debtor schedules at $43,515.83. Dkt. 88 at 22, 24, 26; Plan § 6.01, at 10–11. The Notes are cross-defaulted and cross-collateralized by the same real property.

30. The record contains competing values for the Hico Property: $10,000,000.00 in the Debtor's schedules and $4,013,820.00 in CGB's Claim. Dkt. 88 at 2; Claim at 2. No appraisal has been filed. To the extent CGB is oversecured, it is entitled to interest and to reasonable fees, costs, and charges provided for under the Notes and Deeds of Trust. 11 U.S.C. § 506(b);

**C. CGB's Interest Is Declining in Value and Is at Risk**

31. First, the Debtor has made no payment to CGB since the Petition Date, and the debt secured by the Hico Property has increased from $1,658,649.36 to at least $1,781,700.96 as of August 1, 2026. Interest at the 9.82% rate accrues at approximately $13,573.28 per month on the

petition-date balance, before application of the Post Maturity Rate. Whatever cushion exists is being consumed each month without any offsetting payment.

32. Second, the Debtor cannot fund the costs of preserving the collateral. His operations generate negative monthly net income of $945.12. Plan § 1.03, at 2. The Deeds of Trust require the Debtor to pay taxes before delinquency, insure the improvements, and maintain the property. Unpaid ad valorem taxes are secured by liens that take priority over CGB's lien under Texas Tax Code § 32.05(b), so each year of unpaid taxes directly reduces the value available to CGB.

33. Third, the passage of time compounds the risk. The case has been pending for nearly twelve months. Dkt. 42 at 1. The Plan contemplates that sale proceeds may not be realized until 240 days or more after the Effective Date, and it allows additional acreage to be marketed as a fallback if the initial sale is insufficient. Plan § 6.01, at 9; Plan § 9.02, at 15. During that period, the Plan provides no periodic payments to CGB and imposes no collateral reporting, insurance, or maintenance covenants. Objection ¶ 27, at 9–10.

34. Fourth, the Plan contemplates a disposition of CGB's collateral without payment of the proceeds to CGB. It proposes to sell up to approximately 100 acres, obtain "appropriate partial releases of sold acreage," and pay only $700,000.00 to the line-of-credit component, with nothing allocated to Note-2, while directing the balance of the projected proceeds to reserves, professional fees, and an operating reserve of up to $100,000.00. Plan Art. V, Class 7, at 7; Plan § 6.01, at 10–11. Because both Deeds of Trust encumber the same acreage, a release on those terms would remove collateral securing Note-2 without compensation. Objection ¶¶ 14–18, at 6–7. Adequate protection must ensure that any such sale does not reduce the value of CGB's interest.

**D. Form of Adequate Protection Requested**

35. CGB requests that the Court condition the continuation of the stay, and any use, sale, or lease of the Hico Property, on the following adequate protection, effective as of the date of this Motion:

(a) **Monthly cash payments.** Monthly payments to CGB, beginning on the first day of the first month after entry of the order, in an amount equal to the monthly non-default contractual interest on CGB's Claim, which CGB calculates at $13,573.28 per month plus $4,000 to cover attorneys fees and expenses, or such other amount as the Court determines is sufficient to compensate CGB for the diminution in value of its interest. Payments are to be applied in accordance with the Notes, without prejudice to CGB's rights under § 506(b).

(b) **Replacement liens.** To the extent of any diminution in the value of CGB's interest in the Hico Property, valid, perfected, and enforceable replacement liens on all of the Debtor's and the estate's property acquired after the Petition Date, including rents, products, and profits of the Hico Property and the proceeds of any sale, lease, or other disposition of any portion of it, with the same priority as CGB's liens under the Deeds of Trust, without the need for further filing or recording. 11 U.S.C. § 361(2).

(c) **Sale proceeds.** A requirement that any sale of any portion of the Hico Property be subject to CGB's liens attaching to the proceeds, and that all net sale proceeds, after payment of senior ad valorem taxes and ordinary closing costs approved by the Court, be paid to CGB at closing up to the full amount of its allowed secured claim, allocated between Note-1 and Note-2 as CGB directs under the loan documents, as a condition of any partial release. Plan § 6.03(3), at 12.

(d) **Taxes and insurance.** A requirement that the Debtor (i) pay all ad valorem taxes on the Hico Property before delinquency and provide proof of payment to CGB within ten days after payment, and (ii) maintain insurance on the improvements as required by the Deeds of Trust, naming CGB as mortgagee and loss payee, and deliver evidence of coverage within ten days after entry of the order.

(e) **Reporting and access.** Monthly reports on the marketing and sale of the Hico Property and the Debtor's income and expenses, and reasonable access to the Hico Property for inspection and appraisal on two business days' notice, as provided in the Deeds of Trust.

(f) **Default provision.** A provision that, if the Debtor fails to make any payment or perform any obligation required by the order and does not cure within ten days after written notice to the Debtor and his counsel, the automatic stay terminates as to CGB and the Hico Property without further order, upon CGB's filing of a notice of default and certificate of non-cure.

(g) **Section 507(b).** An allowed claim under § 507(b) to the extent the adequate protection provided proves inadequate. 11 U.S.C. § 507(b).

36. The factual basis for these terms is the Debtor's nonpayment since the Petition Date, the accrual of interest on CGB's Claim at the rate stated in the Claim, the Debtor's negative operating income, the priming effect of unpaid ad valorem taxes, and the Plan's proposed sale and partial release of CGB's collateral. Periodic payments measured by contract interest prevent further erosion of the value protecting CGB's interest; replacement liens and the sale-proceeds requirement prevent a disposition of collateral from reducing that value; and the tax, insurance,

reporting, and default provisions address the Debtor's inability to preserve the collateral from operations.

37. If the Debtor cannot provide the adequate protection requested, CGB requests that the Court grant relief from the automatic stay under 11 U.S.C. § 362(d)(1), as requested in CGB's Motion for Relief from the Automatic Stay.

**CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE, in the alternative to the relief requested in CGB's Motion for Relief from the Automatic Stay and Motion to Dismiss Chapter 11 Case, CGB respectfully requests that the Court enter an order:

(a) conditioning the continuation of the automatic stay, and any use, sale, or lease of the Hico Property, on the adequate protection described in Section D above;

(b) granting CGB replacement liens and an allowed claim under 11 U.S.C. § 507(b) as described above;

(c) providing that the automatic stay terminates as to CGB and the Hico Property upon an uncured default, as described above; and

(d) granting CGB such other and further relief to which it may be justly entitled.

Respectfully submitted,

John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX

*<u>/s/ John Massouh</u>*
John Massouh

**ATTORNEYS FOR CGB AGRIFINANCIAL SERVICES, INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 6, 2026, I attempted to confer with Clayton Everett, Counsel for Debtor. I was unable to reach counsel and presume that he is opposed to this motion and relief requested.

*/s/ John Massouh*
John Massouh

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, a true and correct copy of the foregoing Objection of CGB Agrifinancial Services, Inc. to Confirmation of Debtor's Amended Subchapter V Plan of Reorganization was served via the Court's CM/ECF system on all parties registered to receive electronic notification in this case, and by first-class mail on any party not registered for electronic notification, including:

Clayton L. Everett
Norred Law, PLLC
515 E. Border Street
Arlington, Texas 76010
*Counsel for the Debtor*

Katharine Battaia Clark
Thompson Coburn LLP
2100 Ross Av., Suite 3200
Dallas, TX 75201
*Subchapter V Trustee*

*/s/ John Massouh*
John Massouh