Clayton L. Everett | State Bar No. 24065212
NORRED LAW, PLLC
515 E. Border Street
Arlington, Texas 76010
Telephone: (817) 704-3984
clayton@norredlaw.com
Counsel for the Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-44309-elm11 |
| | § | |
| ANTHONY CHARLES TORDIGLIONE, | § | CHAPTER 11 (SUBCHAPTER V) |
| | § | |
| Debtor. | § | Hearing: December 17, 2026, 9:30 a.m. |
| | § | Re: ECF No. 102 |

**DEBTOR'S RESPONSE AND BRIEF IN OPPOSITION TO MOTION OF CGB AGRIFINANCIAL SERVICES, INC. FOR RELIEF FROM THE AUTOMATIC STAY [ECF NO. 102]**

TO THE HONORABLE EDWARD L. MORRIS, UNITED STATES BANKRUPTCY JUDGE:

Anthony Charles Tordiglione, the debtor and debtor-in-possession (the "Debtor"), files this Response and Brief in Opposition (the "Response") to the *Motion of CGB Agrifinancial Services, Inc. for Relief from the Automatic Stay* [ECF No. 102] (the "Motion") under 11 U.S.C. § 362 and Local Bankruptcy Rules 4001-1 and 7007-1, and respectfully states as follows:

## I. SUMMARY OF RESPONSE

1. CGB's own numbers defeat the Motion. CGB's proof of claim values its collateral, the 560-acre Hico Property, at $4,013,820.00. CGB's own payoff statements put its debt on both notes at $1,838,886.18 as of December 1, 2026, junior only to about $46,000 in ad valorem tax liens. On CGB's figures, CGB is protected by an equity cushion of about $2.1 million—roughly half the collateral's value. The Debtor scheduled the property at $10,000,000.00, which would make the cushion far larger. CGB concedes in the Motion that the property "appears to have

equity" (Mot. ¶ 36), and it told this Court in its confirmation objection that it is oversecured "[e]ven using conservative valuations" (ECF No. 97 ¶ 23). The Fifth Circuit recognizes that an equity cushion of 20% or more is adequate protection.

2. The Motion also rests on a false premise. It describes a "confirmed Plan" and the Debtor's "Post-Confirmation Non-Performance" of "sale milestones" (Mot. ¶¶ 1, 32 & § D). The Plan [ECF No. 92] has not been confirmed, no Effective Date has occurred, and every milestone in Plan § 9.02 runs from the Effective Date. No milestone has come due, so none has been missed. CGB's own companion motions, filed the same day, correctly describe the Plan as "proposed" (ECF No. 104 ¶¶ 1, 16).

3. The case is moving. A buyer has committed to purchase approximately 40 acres of the Hico Property for $600,000—$15,000 per acre, exactly the price the Plan projects and CGB calls "speculation" (Mot. ¶ 31). The buyer is considering additional acreage, and the Debtor expects to have a letter of intent, followed by a purchase contract, in the coming weeks. Closing is expected in January 2027, subject to survey and Court approval. Other Hico tracts of approximately 120 and 45 acres are listed for sale. The Debtor will file an amended plan before the hearing on the Motion that resolves the treatment issues raised in CGB's objection (see Part III.C).

4. Relief under § 362(d)(2) fails at the first element because CGB concedes equity and bears the burden on that issue. 11 U.S.C. § 362(g)(1). Even so, and as Local Bankruptcy Rule 4001-1(b) requires, Part V of this Response sets out a detailed adequate-protection package that the Debtor will provide if the Court finds that anything more than the equity cushion is warranted.

## II. RESPONSE TO THE NUMBERED ALLEGATIONS OF THE MOTION

5. Under Local Bankruptcy Rule 4001-1(b), the Debtor responds to the numbered paragraphs of the Motion as follows. Any allegation not expressly admitted is denied.

**Paragraphs 1–2:** Denied. The Plan has not been confirmed, and CGB is adequately protected by a substantial equity cushion.

**Paragraphs 3–5:** Jurisdiction, venue, and core status are admitted. The remainder states legal conclusions to which no response is required.

**Paragraph 6:** Admitted.

**Paragraph 7:** Admitted that the Standing Chapter 13 Trustee filed the motion cited. The case was later converted with the Court's approval, and that motion does not bear on whether CGB is adequately protected in this subchapter V case.

**Paragraph 8:** Admitted.

**Paragraph 9:** Admitted that amended schedules were filed on June 12, 2026. The schedules speak for themselves. Any characterization inconsistent with them is denied.

**Paragraphs 10–13:** Admitted that the Debtor and Cynthia Ann Tordiglione executed the Notes and Deeds of Trust described. The Debtor lacks knowledge or information sufficient to admit or deny the allegations about endorsements, assignments, the power of attorney, and CGB's authority to enforce the Notes, and therefore denies them. The loan documents speak for themselves.

**Paragraph 14:** Admitted that CGB filed Claim No. 19 in the amount and with the collateral value stated. The Debtor lacks knowledge or information sufficient to admit or deny the balances asserted as of August 1, 2026, and therefore denies them. The Debtor reserves all objections to the claim, including to default-rate interest, fees, and charges.

**Paragraph 15:** Admitted.

**Paragraphs 16–20:** Admitted that the Debtor filed the Plan on July 8, 2026. The Plan speaks for itself. Denied that the Plan has been confirmed, that an Effective Date has occurred, or that any milestone has come due.

**Paragraph 21:** Admitted that CGB filed an objection to confirmation on July 27, 2026. Denied that the objection has merit.

**Paragraph 22:** Admitted that the Debtor has made no payment to CGB since the Petition Date. Denied that any payment was required as adequate protection in light of CGB's equity cushion.

**Paragraph 23:** Admitted that the docket does not yet reflect the items listed. Denied that any of those items has come due. Denied that no progress has been made toward a sale; the Debtor has a committed buyer for approximately 40 acres and other tracts listed for sale.

**Paragraph 24:** The Debtor lacks knowledge or information sufficient to admit or deny the amounts asserted, and therefore denies them.

**Paragraphs 25–38:** These paragraphs state legal conclusions and argument to which no response is required. To the extent a response is required, they are denied. The heading "The Debtor's Post-Confirmation Non-Performance" is denied.

**Prayer:** Denied that CGB is entitled to any of the relief requested.

## III. BRIEF: ARGUMENT AND AUTHORITIES

### A. The burden of proof and the protected interest.

6. CGB bears the burden on the Debtor's equity in the property, and the Debtor bears the burden on other issues. 11 U.S.C. § 362(g). The "interest in property" that § 362(d)(1) protects is the value of the collateral securing CGB's claim. Adequate protection guards against a decline in that value during the stay. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370–73 (1988). Whether "cause" exists is decided case by case. *See In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (evaluating cause on a conglomerate of factors).

### B. CGB is adequately protected by an equity cushion of about 50% even in the worst case.

7. Using only CGB's figures, the equity cushion is as follows:

| Item (CGB's own figures) | Base case | Worst case |
|---|---:|---:|
| Value of Hico Property (CGB Claim No. 19) | $4,013,820.00 | $4,013,820.00 |
| Senior ad valorem tax liens (ECF No. 88; Claim No. 21) | ($46,123.63) | ($46,123.63) |
| CGB payoff as of Dec. 1, 2026, both notes, plus per diem to Dec. 17, 2026 | ($1,845,883.94) | ($1,845,883.94) |
| IRS secured claim, Claim No. 10 (if it attached ahead of CGB) | — | ($120,136.63) |
| Equity cushion at the hearing date | $2,121,812.43 | $2,001,675.80 |
| Cushion as % of collateral value | 52.9% | 49.9% |

8. The figures for CGB's debt come from CGB's own payoff statements for both notes as of December 1, 2026, which include accrued interest, penalty fees, and legal fees, plus CGB's stated combined per diem of $437.36 through the hearing date. The Debtor disputes these amounts and reserves all objections to them; he uses them here only because they are CGB's own figures and therefore the most favorable to CGB. The worst case also assumes that the IRS's secured claim attaches ahead of CGB's 2017 deeds of trust, which it does not appear to do. Even on those assumptions, the cushion at the hearing date is about $2 million. At CGB's own per diem—about $13,300 a month—it would take roughly 90 months, or seven and a half years, for the cushion to fall to 20% of value. On the Debtor's scheduled value of $10,000,000.00, CGB's debt is less than one-fifth of the collateral's value.

9. The Fifth Circuit has endorsed the principle that "an equity cushion of 20% or more constitutes adequate protection." *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264, 1272 (5th Cir. 1997) (quoting *Kost v. First Interstate Bank of Greybull (In re Kost)*, 102 B.R. 829, 831 (D. Wyo. 1989)); *see also Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400–01 (9th Cir. 1984) (cushion of about 20% adequate). CGB's cushion is more than twice that benchmark.

10. Accruing interest does not change the result. An oversecured creditor's interest accrues under § 506(b) and is added to its secured claim. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Those additions are not a decline in the value of the collateral. CGB is not entitled to monthly payments to preserve the size of its cushion. See *Timbers*, 484 U.S. at 372–73; *Orix Credit Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.)*, 54 F.3d 722, 729–30 (11th Cir. 1995). CGB identifies no decline in the value of the Hico Property itself. Its only collateral-based concern is ad valorem taxes, which total about 1% of value and are addressed in Part V.

11. Nonpayment is not, by itself, cause where the creditor is this well protected. Note-1 does not mature until January 1, 2048, and Note-2 does not mature until September 1, 2032 (Mot. ¶ 10). The Plan provides for the line of credit to be paid down from sale proceeds and for the term loan to be cured and reinstated. CGB's objections to that treatment belong at confirmation, not in a motion to foreclose on the Debtor's operating vineyard and ranch during the reorganization.

**C. CGB's feasibility and sale-allocation arguments are premature, and the amended plan will resolve them.**

12. Most of the Motion (¶¶ 31–34) argues that the Plan is not confirmable. Those arguments repeat CGB's pending objection (ECF No. 97) and belong at the confirmation hearing. They are also directed at a plan that is being amended. The Debtor will file an amended plan on or before December 4, 2026 that, among other things: (i) treats CGB's debt solely through Claim No. 19, with Claim Nos. 16 and 18 withdrawn; (ii) applies net Hico sale proceeds, after closing costs and ad valorem taxes, to CGB's claim under both notes, in the amounts and order set out in the amended plan or as the Court directs; (iii) states the interest rate, amortization, and maturity for any retained balance; (iv) provides for allowed interest, fees, and charges under § 506(b); (v) provides adequate protection during the marketing period; and (vi) provides for the notice of substantial consummation required by 11 U.S.C. § 1183(c)(2). The Debtor will also move for approval of the 40-acre sale under 11 U.S.C. § 363 once the contract is signed, rather than waiting for confirmation.

13. In any event, CGB's fear of an "uncompensated release" is unfounded. CGB's collateral cannot be released without its consent or a court order. Under the Plan, CGB's liens attach to sale proceeds "[u]nless a lienholder consents or a final order provides otherwise" (Plan § 6.03(3)). Confirmation "shall not determine lien validity, extent, priority, or release obligations except as expressly stated or necessary to effectuate a specific sale order" (Plan Art. XV ¶ 2). Any

sale outside the ordinary course requires notice and an opportunity for a hearing (Plan § 6.03(2)). The "uncompensated release" CGB fears cannot happen without the Court's approval. The Debtor also commits in Part V to escrow net sale proceeds pending further order.

**D. Section 362(d)(2) does not apply.**

14. Relief under § 362(d)(2) requires CGB to prove that the Debtor has no equity in the property. CGB bears that burden, 11 U.S.C. § 362(g)(1), and it concedes the point (Mot. ¶ 36). That ends the inquiry. Even if the Court reached the second element, the Hico Property is necessary to an effective reorganization. It is the site of the vineyard, winery, and ranch operations of Amore Wines of Texas, LLC and Bull Lion Ranch, and the Plan's funding source. The Plan proposes to sell about 100 of the 560 acres and keep the operating core. See *Timbers*, 484 U.S. at 375–76.

**E. Procedural matters.**

15. *Section 362(e).* CGB filed the Motion on November 6, 2026, and chose to notice the hearing for December 17, 2026, more than 30 days later [ECF No. 107]. By setting that date, and by agreeing with Debtor's counsel on November 9, 2026 that all three of its motions would be heard together on the same day, CGB consented to the stay remaining in effect through the hearing. In the alternative, the Debtor requests that the Court order the stay continued in effect pending the conclusion of the final hearing under 11 U.S.C. § 362(e)(1), because there is a reasonable likelihood that the Debtor will prevail.

16. *Notice.* The Motion uses the 21-day negative-notice form of Local Bankruptcy Rule 9007-1(c). That form may not be used for stay-relief motions (L.B.R. 9007-1(h)(2)). The Motion also omits the statement that Local Bankruptcy Rule 4001-1(b) requires, and its certificate of service describes a different document, CGB's objection to confirmation. The Debtor files this Response within 14 days of service out of caution and without waiving these defects. CGB's

counsel agreed on November 9, 2026 to extend the Debtor's response deadline to December 4, 2026, and the Debtor reserves the right to supplement this Response by that date.

17. *Fourteen-day stay.* CGB offers no reason to waive the fourteen-day stay of any order under Federal Rule of Bankruptcy Procedure 4001(a). That request should be denied.

## IV. RESERVATION OF RIGHTS

18. The Debtor reserves all rights, objections, and defenses, including objections to Claim No. 19 and Claim Nos. 16 and 18, challenges to CGB's standing and to the amount of any interest, fees, and charges, and the right to supplement this Response and to present evidence at any preliminary or final hearing.

## V. STATEMENT OF ADEQUATE PROTECTION (L.B.R. 4001-1(b))

19. The Debtor submits that CGB is adequately protected by its equity cushion. If the Court concludes that more is required, the Debtor proposes that the stay be continued on the following terms, which the Debtor is prepared to have included in an order:

(a) **Equity cushion.** CGB's interest is protected primarily by the equity cushion described in Part III.B, which on CGB's own valuation and payoff figures is about 50% of the collateral's value even in the worst case.

(b) **Insurance.** If the Court so orders, within 30 days after entry of an order, the Debtor will bind property and casualty insurance on the improvements on the Hico Property, naming CGB as mortgagee and loss payee. He will deliver evidence of coverage to CGB's counsel within 7 days after binding and will maintain the coverage while the stay remains in effect.

(c) **Ad valorem taxes.** All delinquent ad valorem taxes on the Hico Property will be paid from the closing of the first Hico sale. Until then, the Debtor will enter into and keep current written payment arrangements with the taxing authorities and provide copies to CGB's counsel within 14 days after entry of an order. The Debtor will pay 2026 taxes before delinquency or at that closing, whichever is earlier.

(d) **No sale or release without court order; proceeds escrowed.** The Debtor will not sell, transfer, or encumber any part of the Hico Property, or request a partial release, except under an order entered after notice to CGB and an opportunity for a hearing. CGB's liens will attach to all proceeds. At closing, after payment of senior ad

valorem taxes and court-approved closing costs, all net proceeds will be held in counsel's IOLTA trust account, subject to CGB's liens, pending further order of the Court.

(e) **Sale and plan milestones.** The Debtor will (i) file the amended plan on or before December 4, 2026; (ii) file a motion to approve the sale of the approximately 40-acre (or expanded) tract within 14 days after the purchase contract is signed; (iii) use best efforts to close that sale by January 31, 2027, subject to the completion of the survey; and (iv) file applications to employ any real estate broker whose compensation will be paid from a sale of the Hico Property.

(f) **Reporting and access.** Beginning 30 days after entry of an order, the Debtor will serve monthly reports on CGB's counsel and the Subchapter V Trustee on the status of the marketing and sale effort, offers received, and the Debtor's income and expenses. On three business days' notice, the Debtor will give CGB reasonable access to the Hico Property for inspection and appraisal.

(g) **Replacement lien and § 507(b).** To the extent of any diminution in the value of CGB's interest in the Hico Property after the Petition Date, CGB will receive a replacement lien on the post-petition rents, products, and proceeds of the Hico Property, with the same priority and validity as its pre-petition liens, without prejudice to CGB's rights under 11 U.S.C. § 507(b).

(h) **Default.** If the Debtor fails to perform any of these obligations, CGB may give written notice to the Debtor and his counsel. If the default is not cured within 14 days, CGB may file a notice of default and request an expedited hearing on stay relief.

## VI. PRAYER

WHEREFORE, the Debtor respectfully requests that the Court (a) deny the Motion; (b) in the alternative, continue the automatic stay conditioned on the adequate-protection terms in Part V; (c) order that the stay remain in effect pending the conclusion of the final hearing under 11 U.S.C. § 362(e); (d) deny CGB's request to waive the fourteen-day stay under Federal Rule of Bankruptcy Procedure 4001(a); and (e) grant the Debtor such other and further relief to which he may be justly entitled.

Dated: November 20, 2026

Respectfully submitted,

NORRED LAW, PLLC

By: /s/ Clayton L. Everett
Clayton L. Everett
State Bar No. 24065212
515 E. Border Street
Arlington, Texas 76010
Telephone: (817) 704-3984
clayton@norredlaw.com
Counsel for the Debtor and Debtor-in-Possession

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2026, a true and correct copy of the foregoing *Debtor's Response and Brief in Opposition to Motion of CGB Agrifinancial Services, Inc. for Relief from the Automatic Stay* was served through the Court's CM/ECF system on all parties registered to receive electronic notice in this case, including the parties listed below, and by first-class mail on any listed party not registered for electronic notice.

John Massouh
Sprouse Shrader Smith PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
Counsel for CGB Agrifinancial Services, Inc.

Katharine Battaia Clark
Thompson Coburn LLP
2100 Ross Ave., Suite 3200
Dallas, Texas 75201
Subchapter V Trustee

Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242

/s/ Clayton L. Everett
Clayton L. Everett